**BARNITZ'S LESSEE *v.* ROBERT CASEY.**

March 10th.

---

*Present....All the Judges.*

The statute of descents in Maryland has not declared how an intestate estate shall descend, which was derived to the intestate from his half brother, or from his brother of the whole blood, or from his son or daughter, or from his wife; but such estates are left to descend as at common law. A devise to A. in fee, and if he shall die under the age of 21 years, and without issue, then to B. in fee, is a good executory devise; and if .B. die before the cont'ngency hap-

ERROR to the Circuit Court for the district of Maryland, in an ejectment brought by the lessee of Barnitz against Casey, to try the title of Barnitz to certain real estate in Baltimore.

The facts of the case were stated by STORY, *J.* in delivering the opinion of the Court, as follows:

On or about the 6th of Feb. 1780, Daniel Barnitz died seized of the premises in the declaration mentioned, having, by his will, devised the same to his wife, *Catharine Barnitz,* in fee, and leaving issue, by his said wife, an only child and heir, *Elizabeth Barnitz,* who intermarried with one *Charles M'Connell,* by whom she had an only child, *John M'Connell;* after whose birth, and sometime in 1781, *Charles M'Connell* died. Afterwards, his widow, *Elizabeth,* intermarried with one *John Hammond,* by whom she had one child only, *John Barnitz Hammond,* and died on the 22d of April, 1788. After her death, *John Hammond* intermarried with *Elizabeth Anderson,* and died on the 7th of April, 1805, leaving issue by the last marriage, *Jane B. Hammond* and *Henry Hammond,* his heirs at law, who are now alive, under whom the Defendant in ejectment claims. On the 7th of April, 1794, *Catharine Barnitz* died seized of the premises.

having first duly made her last will and testament. By that will she devised to the said *John M'Connell*, in fee, two certain parcels of land. She then devised another parcel of land, including her mansion-house to the said *John Barnitz Hammond*, to the intent and uses following, viz. subject, (as to the rents thereof) to certain trusts for the maintenance and education of the said *John Barnitz Hammond*, and for the payment of certain specific debts of the testatrix, "to the "use of *John Hammond*, the father, for and during "the minority of the said *John B. Hammond*, if he "shall so long live, provided the said *John Hammond* "shall maintain, clothe and educate the said *John B.* "*Hammond*, out of the rents thereof during his mino-"rity ; and from and immediately after the said *John B.* "*Hammond* shall arrive to the age of 21 years, or the "death of the said *John Hammond*, his father, which "shall first happen," then to the said *John B. Ham-* *mond* in fee. The testatrix then provides, "and if it "should hereafter happen that the said *John M'Connell* "should die before he shall arrive to the age of 21 years, "and without issue, then I give, devise, and bequeath "all the estate of the said *John M'Connell*, which is "hereby devised to him, to go immediately to the said "*John B. Hammond*, his heirs and assigns forever. "And if it should hereafter happen that the said *John* "*B. Hammond* should die, before he shall arrive to the "age of 21 years, and without issue, then and in such "case, after the payment of my debts as above mention-"ed, I give, bequeath, and devise," &c. (the same land and mansion-house before devised to *John B. Hammond*) "to the said *John Hammond*, his heirs and assigns for-"ever ; and also all the residue of estate herein before "or after devised to the said *John B. Hammond*, and "not hereby otherwise disposed of, I then, and in such "case, give and devise the same to the said *John* "*M'Connell*, to hold to him, his heirs and assigns for-"ever, from and immediately after the death of the said "*John B. Hammond* as aforesaid ; and in case of the "death of both of my grandsons, under age and with-"out issue as aforesaid, then I give, devise, and be-"queath all that part of my estate which I have herein "before given to the said *John M'Connell*, to *Charles* "*Barnitz*, of," &c. "to hold to him, his heirs and as-"signs forever."

*pen, it devolves upon his heir, and so from heir to heir until the contingency happen, when it vests absolutely in him only who can then make himself heir to B. the executory devisee. And although A. be the heir at law of B. yet the executory devise thus devolving on him, is not merged in the precedent estate, but on the death of A. devolves to the next heir of B. One tenant in common cannot maintain ejectment against his co-tenant, without actual ouster.*

The testatrix then provides for the payment of her debts, by a sale, if necessary, of some of her lots of land, on or near church-hill, in Baltimore, and then proceeds, "And I give and devise all the rest "and residue of the said lots on or near church-hill "aforesaid, and all my estate therein (subject nevertheless to the devises aforesaid) to my said grandsons *John M'Connell* and *John B. Hammond*, their heirs "and assigns forever, to be equally divided between "them, share and share alike, as tenants in common, "and not as joint tenants." After some intermediate bequests, the testatrix devises "all the rest, residue, "and remainder of her estate, real and personal, to the "said *John M'Connell* and *John B. Hammond*, their heirs "and assigns forever, to be equally divided between "them, share and share alike."

*John M'Connell* attained his full age of 21 years, married, had issue, and afterwards on the 7th of April, 1802, died without leaving any surviving issue. And *John B. Hammond* died on the 12th of February, 1808, under the age of 21 years, and without issue.

The lessors of the Plaintiff are the children and heirs at law of *Charles Barnitz*, who was the only brother of *Daniel Barnitz*, the testator. And upon the defect of lineal heirs, the said lessors claim as next heirs, in blood, of *John M'Connell*, on the part of his mother *Elizabeth Barnitz*, the daughter of *Daniel Barnitz*. It is admitted that the inheritable blood is extinct on the part of *Charles M'Connell*, the father of *John M'Connell*.

At the death of *John B. Hammond*, the property consisted of four descriptions; which it may be proper to enumerate.

1. The land specifically devised to *John M'Connell*, with a limitation over to *John B. Hammond*.

2. The land specifically devised to *John B. Hammond*, with a limitation over in fee to his father.

3. The moiety of the church-hill lots, and the residuary estate devised to *John M'Connell*, in fee.

**4.** The moiety of the church-hill lots, and the residuary estate devised to *John B. Hammond* in fee, with a limitation over to *John M'Connell.*

At the time of the death of Catharine Barnitz, (as she survived her daughter) her two grandsons, M'Connell and Hammond, were her heirs at law.

HARPER, *for Plaintiff in error.*

**1.** As to the devise to *John M'Connell,* with limitation over, in case of his death under age, and without issue, to *J. B. Hammond.* This was a fee simple in M'Connell, with a conditional limitation, and not an estate tail.   **1.** *Fearne on Contingent Remainders,* 9, 10, *Dublin ed.* 1795. *id.* 409.  *Powell on Devises,* 261.   7 *T. R.* 589.  *Shears v. Jeffrey. Plowd.* 408.  3 *Co.* 10. *Carthew,* 175. *Dyer,* 127.

Upon *J. M'Connell's* arrival at full age he had an absolute estate in fee, because the condition never could happen which was to defeat his estate.

As he took by purchase, and not by descent, and as at the time of his death he left neither child, nor brother or sister of the whole blood, the estate descended, according to the statute of descents in Maryland, to his brother of the *half blood, John B. Hammond.*

*J. B.* Hammond took it *by descent,* through his mother, and therefore the estate *descended to him " on the part of his mother,"* within the meaning of the statute.

He certainly took by *descent,* and not by *purchase;* and the *commune vinculum,* which connected him with his brother, must be traced through his mother.

The statute was intended to prevent escheats *pro defectu sanguinis,* and to provide for all cases.

The legislature meant to comprehend all cases in three classes.

**1.** Where the estate had *descended* to the intestate, *on the part of the father.*

**2.** Where it had *descended, on the part of the mother;* and

BARNITZ'S     3. Where it had vested in the intestate *by purchase,*
LESSEE    and not derived from or through any of his ancestors.
*v.*

CASEY.        The Court will not suppose that the legislature has
————    omitted to provide for the case where the estate has de-
scended from a brother to a brother, but will rather
place the present case in the second class.

The legislature did not mean to limit the 2d class to cases
where the estate had descended *from* the mother, because it
provides, that if there be no child or descendant of the in-
testate, the estate shall go *to* the mother : And it would be
absurd to say, that an estate which had descended *from* the
mother, should descend again *to* the mother.   So if the
estate had descended from the mother's father directly to
the mother's son. it would be an estate which had descend-
ed to the son on the part of his mother, and yet it had
not descended either from or through his mother, for
the *estate* had never vested in her.   The statute must
mean every case where the blood must be traced through
the mother ; every case where the mother is a link of
the chain which connects the intestate with the person
from whom the estate descended to him.

This estate, therefore, must be understood, as having
descended to *J. B. Hammond,* on the part of his mother ;
and therefore, inasmuch as at his death, he left neither
child nor descendant, nor mother, nor brother or sister
of the blood of the mother, nor descendant of such bro-
ther or sister, nor grandfather on the part of the mother,
nor descendant of such grandfather, nor father of such
grandfather, and inasmuch as the lessors of the Plaintiff
are the descendants of the father of such grandfather,
the estate must, by the provisions of the statute, descend
to them.

2d.  The devise to *John M'Connell,* in fee, of the moie-
ty of the church-hill lots, and of the general residuum,
vested in him a fee simple estate from the beginning. He
took by purchase under the will.   It descended to J. B.
Hammond by the same rule of descent as in the former
case, and by the same construction of the statute has de-
scended from him to the Plaintiffs.

3d.  The third case under this will, is that of the spe-
cific devise to *J. B. Hammond,* with limitation over, in

case of his death under age and without issue, to *John M'Connell.*

*J. B. Hammond* died under age and without issue, so that the fee devised to him was defeated, and would have vested immediately in *John M'Connell,* if he had been alive, but he died in the life time of *J. B. Hammond.* In whom then did it vest? By the rules of the common law, *John M'Connell* had such an interest in the devise, as was descendible to his heirs. Who were his heirs? Not they who were such at the time of his death, but they who answered the description of his heirs at the time of the death of J. B. Hammond. 2 *Fearne,* 529. id. 535. 2 *Wilson,* 29. *Goodright v. Searle.*

John M'Connell, if he had been alive at the time of the death of J. B. Hammond, would have taken the fee by *purchase,* and the lessors of the Plaintiff were the only persons who could at that time entitle themselves as his heirs, there being no heirs of the paternal line then living.

MARTIN *and* PINKNEY, *Attorney General, contra.*

The executory devises were void, because the contingency is the dying " without issue" indefinitely, and not limiting it to the case of dying without *leaving* issue alive at the time of his death. 1 *Fearne,* 411. 2 *Fearne,* 74. 144–5, 154. 1 *Sid.* 148, *Cotterson v. Right.* 4 *Bac. Ab.* 251. (*Gwillim's Ed.*) 2 *Fearne,* 187, 358. 1 *P. Wms.* 198, *Nichols v. Hooper.* 2 *Fearne,* 245. 2 *Fearne,* 206. 159. 154. 160. 2 *H. Bl.* 358.

The limitations over being void, each took an absolute fee simple in the lands devised to him.

Upon the death of *John M'Connell,* the estate descended, according to the provisions of the statute, to J. B. Hammond, who took, not by way of descent at common law, but by force of the statute. The preamble of the statute shows that the legislature meant to abolish the law of descents altogether.

The expression " on the part of the mother," means, *from or through* the mother. Now this estate never came to J. B. Hammond from or through his mother. Under

BARNITZ'S
LESSEE
*v.*
CASEY.

the 3d branch of the statute, every estate which comes to an intestate, " *and not derived from or through either* " *of his ancestors,*" is supposed to have come by *purchase,* and is to descend accordingly. This estate was not derived to the intestate, J. B. Hammond; from or through either of his ancestors, and therefore is to descend *as if* it came to him by purchase. This construction makes the statute provide for all cases, whereas the construction insisted upon by the Plaintiffs, leaves he cases where the estate has descended or passed by force of the statute from brother to brother of the whole blood, or from son to father, or from husband to wife, or from wife to husband, wholly unprovided for; for these are not cases of purchase, nor of descent from ancestors.

If, however, the case of Hammond be *casus omissus,* then the estate may descend at common law through the line of his father.

One argument of the Plaintiff's counsel was built upon the absurdity of supposing that the statute directed an state to descend *to* the mother, which had already descended *from* her. But the statute only directs it to descend to the mother, by way of illustration, so as to lead to the heir.

But if the limitations over were good, then *John M'Connell* died seized of an hereditament, a descendible interest, which went to his heir. Who was his heir? This same J. B. Hammond, so that either way the absolute estate in fee vested in him as a purchaser, and descended to his heirs. Again, the 3d section of the statute declares, " that no right in the inheritance shall " accrue to or vest in any person, unless such person is " in being, and capable in law to take *as heir* at the time " of the intestate's death." Now these Plaintiffs were not " capable in law to take as heirs" to John M'Connell " at the time of his death." So that they are prohibited by the statute from taking the benefit of this executory devise, even if they could do so by the common law. Under the statute J. M'Connell had, at his death, an inheritable interest in the land devised to J. B. Hammond, with limitation over. The statute makes no difference between vested and contingent interests; they all descend alike

But there is a fatal objection to the Plaintiff's recovery in this case. The lessors of the Plaintiff are tenants in common with the Defendants; and one tenant in common cannot maintain ejectment against another, without proof of *actual ouster*. Such *ouster* is not proved.

HARPER, *in reply.*

The Defendants have confessed lease, entry and ouster, and therefore, an actual ouster need not be proved.

The whole question is as to the meaning of the words "descend on the part of the mother."

There are only two modes of acquiring property, viz. by purchase and by descent; by the act of the party, or by act of law.

Descents are either lineal or collateral. Lineal is from the ancestor in the direct descending line. Collateral, is where you first ascend to the common ancestor, and then descend until you find the heir.

The construction of the statute adopted by the Defendants, allows only one kind of descent—lineal. The statute uses the word "descent" *generally,* comprehending both kinds. It says *from* or *through* either of his ancestors. "*From*" applies to *lineal* descent; "*through*" to *collateral.* If the statute includes collateral descents, there is an end of the question. If a man takes an estate by reason of his mother, he takes *through* his mother. If a man takes as great grandson from I. S. the *estate* has not passed through the father or grandfather, yet he takes through them. So in tracing a collateral descent, the *estate* does not go through the intermediate links, yet the heir claims through them.

As to the executory devises. The contingency was not too remote nor indefinite. It must be determined within 21 years. If the contingency had been simply *dying without issue,* there would be weight in the objection; but it is dying *under age,* and without issue; so that if he came of age, *or* had issue, the estate became absolute. Here are not two conditions, but two facts making one condition.

The Plaintiffs do not take *as heirs*, but as *purchasers* under the will by the description of their persons ; if they answer the description of heirs at the time the contingency happens on which the executory devise takes effect, they must take. A possibility is not descendible. They take as purchasers. This is an answer also to the objection raised upon the 3d section of the statute. They do not claim *as heirs*, and therefore are not within the statute. The statute refers to their natural capacity to take. It alludes to the disability of alienage, attaint, &c. and was intended to exclude posthumous children in cases of collateral descent.

*March 11th, 1813. Present....*MARSHALL, *Ch. J.* WASHINGTON, DUVALL *and* STORY, *J.*

The Court having taken time since last term to advise,

STORY, *J.* (after stating the facts of the case,) delivered the opinion of the Court as follows :

It is true, that the general rule is, that an heir shall not take by *devise*, when he may take the same estate in the land by *descent*. *1 Roll. Abr. 626. l. 30. Hob. 30. 1 Salk. 242. 1 Bl. Rep. 22.*

But it is not denied that all the estates which each of the grandsons derived under the will, were estates by purchase. Admitting the executory devises over to be good, there could be no doubt as to any part of the estates ; for the estates are of a quality different from what the parties would have taken in the course of descent.

It has been argued by the Plaintiff's counsel, upon the foregoing facts, that as to the whole estate immediately devised to John M'Connell, the lessors of the Plaintiff are entitled to recover, in the events which have happened, as his heirs *ex parte materna ;* and that as to the estate devised to him upon the contingency of the death of John B. Hammond *under age and without* issue, the lessors of the Plaintiff are entitled to recover as the heirs at law of John M'Connell, at the time when the contingency happened, although not heirs at the time of his death.

The decision of these points depends upon the true construction of the statute of descents of Maryland, and the application thereto of the principles of the common law.

This statute of descents, (1786, ch. 45,) after reciting that the law of descents which originated with the feudal system and military tenures, is contrary to justice, and ought to be abolished, enacts, "That if any person seized of an estate," &c. "shall die intestate thereof, such lands," &c. "shall descend to the kindred, male and female, of such person, in the following order, to wit: First, to the child or children, and their descendants, if any, equally, and if no child or descendant, *and the estate descended to the intestate on the part of the father,* then to the father, and if no father living, then to the brothers and sisters of the intestate of the blood of the father, and their descendants equally, and if no brother or sister as aforesaid, or descendant from such brother or sister, then to the grandfather on the part of the father, and if no such grandfather living, then to the descendants of such grandfather and their descendants, in equal degree equally, and if no descendant of such grandfather, then to the father of such grandfather, and if none such living, then to the descendants of the father of such grandfather in equal degree, and so on, passing to the next lineal male paternal ancestor, and if none such, to his descendants in equal degree, without end : And if no paternal ancestor, or descendant from such ancestor, then to the mother of the intestate, and if no mother living, to her descendants in equal degree equally, and if no mother living, or descendants from such mother, then to the maternal ancestors and their descendants in the same manner as is above directed as to the paternal ancestors and their descendants. *And if the estate descended to the intestate on the part of the mother,* and the intestate shall die without any child or descendant as aforesaid, then the estate shall go to the mother, and if no mother living, then to the brothers and sisters of the intestate of the blood of the mother, and their descendants in equal degree equally, and if no such brother or sister, or descendant of such brother or sister, then to the grandfather on the part of the mother, and if no such grandfather living, then to his descendants in equal degree equally, and if no such de-

scendant of such grandfather, then to the father of such grandfather, and if none such living, then to his descendants in equal degree, and so on, passing to the next mail maternal ancestor, and if none such living, to his descendants in equal degree, and if no such maternal ancestor, or descendant from any maternal ancestor, then to the father of the intestate, and if no father living, to his descendants in equal degree equally, and if no father living, or descendant from the father, then to the paternal ancestors and their descendants, in the same manner as is above directed as to the maternal ancestors."

"And if the estate is or shall be vested in the intestate by purchase, and not derived from or through either of his ancestors, and there be no child or descendant of such intestate, then the estate shall descend to the brothers and sisters of such intestate of the whole blood, and their descendants in equal degree equally, and if no brother or sister of the whole blood, or descendant from such brother or sister, then to the brothers and sisters of the half blood and their descendants, in equal degree equally, and if no brother or sister of the whole or half blood, or any descendant from such brother or sister, then to the father, and if no father living, then to the mother, and if no mother living, then to the grandfather on the part of the father, and if no such grandfather living, then to the descendants of such grandfather, in equal degree equally, and if no such grandfather, or any descendant from him, then to the grandfather on the part of the mother, and if no such grandfather, then to his descendants in equal degree equally, and so on without end, alternating the next male paternal ancestor and his descendants, and the next male maternal ancestor and his descendants; and giving preference to the paternal ancestor and his descendants; and if there be no descendants or kindred of the intestate as aforesaid to take the estate, then the same shall go to the husband or wife, as the case may be; and if the husband or wife be dead, then to his or her kindred in the like course as if such husband or wife had survived the intestate, and then had died entitled to the estate by purchase; and if the intestate has had more husbands or wives than one, and all shall die before such intestate, then the estate shall be equally divided among the kindred of the several husbands or wives in equal degree equally."

Three classes of cases are here in terms provided for.

1. " Estates descended to the intestate on the part of " the father."

2. " Estates descended to the intestate on the part of " the mother."

3. " Estates vested in the intestate by purchase and " not derived from or through either of his ancestors."

The descent of an estate of purchase, from brother to brother, and from a son to a parent, where the brother or the parent is the *propositus*, is not directly within the language of the statute. For, by the common law, a descent from brother to brother is held to be an immediate descent, and not *from* or *through* the parents ; and the express provision of the statute of Maryland as to estates of purchase, necessarily involves the same conclusion ; and the same may be declared of a descent from a child to a parent under the same statute.

It has been argued that the legislature intended to form a complete scheme of descents; and that the Court ought not to construe any case to be a *casus omissus*, if by any reasonable construction the words can be extended to embrace it. Both parties accede to this argument, but they apply it in a very different manner. The Plaintiffs contend that the descent from brother to brother was meant to be included in the first and second classes of descents, as the parents were the common link of connexion from and through whom the consanguinity was to be sought; that therefore the descent, in such case, is *ex-parte paterna*, or *materna*, as the father or mother happens to be the *commune vinculum*. And the Plaintiffs rely on the words " *and not derived from or through either of his ancestors*," in the clause embracing the third class, as distinctly showing that the legislature deemed every case of *descents* to be completely within the preceding classes. On the other hand, the Defendants contend that whatever might be the legislative supposition, it is impossible to support the position, that a descent from brother to brother, or from child to parent, is a descent *ex-parte paterna* or *materna.*

BARNITZ'S LESSEE v. CASEY.

It is therefore, either a *casus omissus*, or the words " and not derived *from* or *through* either of his ancestors" are to be considered not as qualifying and limiting the preceding words, but as either constituting a fourth class of cases, embracing all such as are *not* included in the three preceding classes; or as explaining estates by purchase to include all cases which are not paternal or maternal descents.

There are certainly intrinsic difficulties in admitting either of these constructions. If the legislature have proceeded on a mistake, it would be dangerous to declare that a Court of law were bound to enlarge the natural import of words in order to supply deficiencies occasioned by that mistake. It would be still more dangerous to admit that because the legislature have expressed an intention to form a scheme of descents, the Court were bound to bring every case within the specified classes. In the present case, equal violence would be done to the ordinary use of the terms employed by adopting the construction contended for by either party.

It is not a descent *from* or *through* the paternal or maternal line, in the sense of the common law. Nor is it a *purchase.*

The words " *and not derived from or through either of his ancestors*" are manifestly used as explanatory of the legal import of purchase. They are the exact words which the common law selects to distinguish the estate of a purchaser from the estate of an heir.

It is obvious that the legislature use the words *descent* and *purchase* in their technical and legal sense. They have also expressly provided for the case of a descent from brother to brother, passing by the parents; and of a parent from a child, when there are no brothers or sisters. These descents must therefore be direct and immediate; and the former case is so deemed also at the common law. It is therefore in our judgment perfectly clear, that a descent from brother to brother is not within the statute, and of course is a *casus omissus*, to be regulated by the common law.

To apply this to the present case. By the arrival of John M'Connell at the age of 21 years, all the estates

devised to him *immediately* became absolute estates in fee simple. On his death they passed to his half brother, John B. Hammond; and upon his death they passed to the heirs at law of the latter. The lessors of the Plaintiff have therefore made no sufficient title thereto.

Let us now consider the second question: whether the lessors of the Plaintiff have any title to the estates which were devised over to John M'Connell upon the contingency of John B. Hammond's dying under age and without issue.

It has been argued by the Defendant's counsel that this executory devise is void because the contingency is too remote.

It is the acknowledged rule, that an executory devise is not too remote if the contingency may happen within a life or lives in being, or 21 years and a few months after.

In the present case the contingency must have happened within 21 years at all events. For if John B. Hammond attained his full age the estate vested absolutely. To have defeated the estate over, it was sufficient either that he attained his full age, or died under age leaving issue. The authorities are conclusive on this point. 1 *Wils.* 140, 270. 2 *Burr.* 873. 1 *Saund.* 174. 5 *Bos. and Pul.* 38. 12 *East.* 288, 2 *Str.* 1175. There is no validity therefore in this objection.

In the next place it will be necessary to consider what is the nature of an executory devise as to its transmissibility to heirs, where the devisee dies before the happening of the contingency.

And it seems very clear that at common law, contingent remainders and executory devises are transmissible to the heirs of the party to whom they are limited, if he chance to die before the contingency happens. *Pollexfen* 54. 1 *Rep.* 99. *Cas. Temp. Talb.* 117. In such case, however, it does not vest absolutely in the first heir so as upon his death to carry it to his heir at law, who is not heir at law of the first devisee, but it devolves from heir to heir, and vests absolutely in him only who can make himself heir to the first devisee at

ARNITZ'S the time when the contingency happens, and the exe-
LESSEE cutory devise falls into possession.
v.
CASEY.          This rule is adopted in analogy to that rule of de-
scent which requires that a person who claims a fee
simple by descent from one who was first purchaser of
the reversion or remainder expectant on a freehold
estate, must make himself heir of such purchaser at the
time when that reversion or remainder falls into pos-
session. *Co. Lit.* 11. *(b.)* 14, *(a.)* 3 *Rep.* 42. Nor
does it vary the legal result that the person to whom
the preceding estate is devised. happens to be the heir
of the executory devisee, for though on the death of the
latter the executory devise devolves upon him, yet it is
not merged in the preceding estate, but expects the
regular happening of the contingency and then vests
absolutely in the then heir of, the executory devisee,
The case of *Goodright v. Searle,* 2 *Wils.* 29, is decisive
on this point and indeed runs on all fours with the
present.

But it is contended that the statute of descents of
Maryland has changed the rule of the common law in
this respect; and has made the death of the intestate
the point of time from which the descent and heirship
are in every case to be traced. The third section, which
is relied on for this purpose, enacts as follows: " That
" no right in the inheritance shall accrue to or vest in
" any person, other than to children of the intestate
" and their descendants, unless such person is in being,
" and capable in law to take as heir at the time of the
" intestate's death; but any child or descendant of the
" intestate, born after the death of the intestate, shall
" have the same right of inheritance as if born before
" the death of the intestate."

In our judgment; the conclusion drawn from this
clause is not correct. The object of the section is to
limit the natural *capacity* to take, as heirs, to persons
in being at the time of the death of the intestate, where
the estate is then capable of vesting in possession; and
not to make persons heirs, who, if in being at the time,
would not, by the common law, answer the description
of absolute heirs, or to give a vested absolute interest,
where the common law had given only a possible con-
tingent interest. The legislature had in view cases of

posthumous children, and cases where a descent to an heir had been defeated by the subsequent birth of a nearer heir. The argument of the Defendants, on this point, ought not, therefore, to prevail. No question has been made as to the land specifiedly devised to John B. Hammond in fee with a limitation over to his father in fee. As that limitation over was a good executory devise, and, in the events which happened, took effect, it is very clear that the lessors of the Plaintiff cannot claim title thereto. This is indeed conceded on all sides.

The result of this opinion accordingly is, that the lessors of the Plaintiff are entitled, as heirs of John M'Connell, at the happening of the contingency, on the death of John B. Hammond, under age and without issue, to one moiety of the Church-hill lands, and the residuary estates as tenants in common with the heirs of John B. Hammond; but they are not entitled to any portion of the lands of which John M'Connell had an absolute vested fee at the time of his decease.

As, however, a tenant in common cannot in general maintain an action of ejectment against his co-tenant, and there are no facts found in this case to prove an actual ouster and to take it out of the general rule, the consequence is that the judgment, in the opinion of a majority of the Court, must be affirmed with costs.