## LANDIC *v.* SIMMS.

#### WILLS; DEVISE TO HEIRS, EFFECT OF.

1. Where there is a devise by a testator to his heir of an estate, the same in quality and quantity as the heir would have taken if there had been no will, the heir takes by descent as heir, and not by purchase as devisee, and the devise is void. But in order that this rule should apply, the estate must be precisely the same, both in quality and quantity.

2. Where a testator devises his estate to his wife for life, directing a sale thereof after her death, and an equal division of the proceeds among their three children, and provides further, that in event of but one child surviving the mother, then such child shall take the estate in fee simple, and but one child does survive the mother, such surviving child will take the estate by purchase under the will, and not by descent. In such a case, the surviving child has had at no time more than a reversion or vested remainder in one-third of the estate by descent from her father, and a reversion or vested remainder in one-third is not the legal equivalent of a contingent remainder or executory devise of the whole, which is what she takes under the will.

No. 85. Submitted November 17, 1893.—Decided December 4, 1893.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill to enjoin the defendant from asserting title to certain real estate. *Reversed.*

THE CASE is stated in the opinion:

*Mr. Calderon Carlisle* and *Mr. Wm. G. Johnson* for the appellant:

Two questions only, arise in this case: 1. Is a purchaser under the will of an ancestor a purchaser within the true in-

tent and meaning of the third provision of the act of Assembly of Maryland of 1786, Ch. 45, to direct descents, or do the words " *and not derived from or through either of his ancestors* " exclude *such* a purchaser and devolve the estate upon the collateral heirs, *ex parte paterna*, to the exclusion of the half-blood? and 2. Does an estate descended from a sister of the half-blood upon her brother on his death intestate and without issue descend to his common-law heirs, or is there any provision in the Maryland statute as to the descent of this land which neither descended *ex parte paterna* or *ex parte materna*, and which was not vested in the intestate by purchase?

That Elizabeth took by purchase, in the sense of the Maryland act to direct descents, and that this land was in the sense of said statute " not derived from or through either of his ancestors," and that land inherited by a brother from a sister must descend by the common law, do not seem to be open questions in this jurisdiction.

The Supreme Court of the United States in the case of *Barnitz* v. *Casey*, 7 Cr. p. 456, decided on March 11, 1813, by Chief Justice Marshall and Justices Washington, Duvall, and Story, has construed the very portions of the Maryland statute on which this case turns, so as to support the contentions of the complainant, and it is submitted that this decision, never reversed or qualified, is a binding authority on this court.

Both points arising in the case at bar have, in the above case been expressly decided by the Supreme Court of the United States, which held, first, that one who took by his mother's devise was a purchaser in the sense of the Maryland statute, and, consequently, on his death intestate the land so vested in him passed to his half brother; and, second, that the land inherited by the brother of the half-blood, not being descended *ex parte paterna* or *ex parte materna*, and not being vested by purchase, was not provided for by statute, but must be regulated by the common law. The decision of the Supreme Court is in exact accord with the decisions of the

Court of Appeals of Maryland, and it is submitted that a careful reading of the cases of *Stewart* v. *Evans*, in 3 Harr. & John., p. 287, and *Hall* v. *Jacobs*, in 4 H. & J., p. 245, in the light of the opinion of the Court of Appeals in *Stewart* v. *Jones*, in the 8th of Gill & Johns., p. 29, will show that the cases "are in perfect harmony with each other, and that there is no discrepancy between them."

*Mr. A. A. Birney* for the appellee:

The English and American cases agree upon the doctrine that where the quality of an estate devised to an heir-at-law is the same as that which he would have taken without the will, he will be held to have taken by descent and not as purchaser under the will. The doctrine is stated in 1 Salkeld, 241, and the two cases of *Chaplain* v. *Leroux*, 5 Maule & S., 14, and *Manbridge* v. *Plummer*, 2 My. & K., 93, are strikingly like the case at bar. The same doctrine obtains in America. 1st Redf. on Wills, 260; *Whitney* v. *Whitney*, 14th Mass., 90. A testatrix devised to a trustee, his heirs and assigns in trust to pay one-half of the net income to each of the two daughters of the testatrix during life, remainder to their respective appointees by will, and in default of appointment to the heirs-at-law of said daughters. One of the daughters died during the life of the testatrix, intestate, leaving two children. *Held,* that these two children took by descent from their grandmother, the testatrix. *Sedgwick* v. *Minot,* 6 Allen, 171. The whole subject is elaborately discussed by Bigelow, J., in *Ellis* v. *Page et al.*, 7 Cushing, 161. In that case the testator devised land to certain trustees "in trust to pay over the net rents and income thereof to his son C. during his life, and on his decease to convey in fee and pay to his children said houses and lots or the proceeds thereof, in case they have been sold, and in default of such children, to convey and pay the same to his heirs-at-law:" and authorized the trustees to sell at their discretion any of the land so devised to them; no sale was ever made by them under this power, and C. died without issue.

Held, that the heirs of the testator took by descent and not as purchasers under the will.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit in equity to quiet title, or rather, in fact, to determine in which of two claimants, or of two sets of claimants, the title is to certain real estate described in the bill of complaint. The complainant and appellant, Isaac Landic, who is in possession, filed the bill, and sought an injunction to prevent the defendant from setting up title in himself. The court below decided that the title was in the defendant, and accordingly dismissed the bill; and from its decree the present appeal has been prosecuted.

The case has been presented to us upon an agreed statement of facts, or an "agreed case," as it is called, which is in the following terms:

### "AGREED CASE.

"Elizabeth Landic, daughter of Charles and Frances Buchanan, was one of three children, all of whom survived the father. Elizabeth took the land in question in this suit by the devise in her father's will, dated September 10, 1830, expectant on the life of her mother, which terminated in 1862. Elizabeth survived her two brothers, who died in the lifetime of their mother, intestate and without issue; and married Isaac Landic, the original complainant herein. Frances, her mother, married John Landic, the younger brother of said original complainant, as her second husband. Isaac Landic and his wife Elizabeth had issue, an only child, who died in infancy; and Isaac, on the death of his wife in 1881 (intestate and without issue her surviving), became tenant by the curtesy.

"John Landic and Frances had issue, a son, Richard Thomas Landic, half-brother to Elizabeth, who survived his mother. The mother died in 1862, having survived her second husband, John Landic; and Richard Thomas Landic died intestate and without issue in 1883, having survived his father and his half-sister Elizabeth.

"Complainant claims that, subject to the tenancy by the curtesy of Isaac Landic, Richard Thomas inherited the land from his half-sister; and upon the death of Richard, the tenant by the curtesy, being the oldest of several sons of the grandfather of Richard Thomas, was the heir at common law of Richard Thomas, and became thus tenant in fee.

"Defendant claims that the land did not pass at Elizabeth's death to her half-brother; but, subject to the tenancy by the curtsey of Isaac Landic, descended to the blood of the father of Elizabeth as an estate descended *ex parte paterna*; and defendant is a nephew and grantee of other nephews and nieces of Charles Buchanan, the father of Elizabeth.

"The decree below dismissed the bill. The complainant was in possession of the land in question when he filed his bill; and if the court shall be of opinion that he took the fee by inheritance, the decree must be reversed, and a decree entered perpetually enjoining defendant from setting up title to said land; otherwise the decree below must be affirmed.

(Signed)     CALDERON CARLISLE,
*Sol. for Complainant.*

(Signed)     A. A. BIRNEY,
JAMES H. SMITH,
*Sols. for Defendant.*"

It is understood that in this court the case was argued upon somewhat different grounds from those taken in the lower court. There, it seems to have been assumed that Elizabeth Landic took by devise under the will of her father, and not by descent; and the question argued was, whether, upon her death intestate, her half-brother, Richard Thomas Landic, inherited from her, or whether it reverted to the kindred of her father as having been derived from her father. The court below, in disregard, as it would seem, of the authoritative decision of the Supreme Court of the United States in the case of *Barnitz's Lessee* v. *Casey*, 7 Cranch, 456, held that the estate went back to the kindred of Elizabeth's father, whose title was vested in the defendant, and rendered

its decree accordingly. At the hearing before us this position was abandoned by the appellee as wholly untenable; and the ground taken on his behalf was that Elizabeth Landic took by descent from her father, and not by the devise in his will; that this devise was void as giving her the same estate which she would have taken by descent; and that, as she was in by descent, and not by purchase, her half-brother could not inherit from her, and the property went back to her father's relatives.

We will not hold the parties bound, under the circumstances of this case, to the strict letter of their "agreed case." If we did, it would seem as if there were but little room left for argument. For, if Elizabeth Landic took under her father's will, as the agreed statement says she did, most undoubtedly she took by purchase, and not by descent; and the subsequent devolution of the estate would be controlled by that fact. But the will of Charles Buchanan is in the record; and it is not improper that we should consider it as part of the agreed statement, and as qualifying that statement as far as it may. The substantial part of that will which bears upon the present controversy is as follows:

"I give and bequeath to my beloved wife Frances, the house and lot of ground which I now own, for and during her natural life, she paying the taxes for the premises and keeping them in repair, and paying my funeral expenses and other debts; she will also support my children, and educate the two younger ones, Elizabeth and Charles.

"At the death of my said wife, it is my will that my house and lot be sold by the direction of the judge of the Orphans' Court, who is hereby authorized to give a deed for the same, and to have the proceeds of said sale divided equally between my three children, viz: John, Elizabeth and Charles, or the survivor of them; but if only one of my children should survive my wife, it is my will that there be no sale, and that the property devolve on that child. Should my wife survive all my children, they leaving no heirs, it is my will that the property be hers in fee-simple."

On behalf of the appellant, it is claimed that Elizabeth Landic, having survived her mother and brothers, took the land in fee simple by the devise in this will; and that, therefore, she took by purchase and not by descent. For the appellee, on the contrary, it is argued that the devise gave to her the same estate which she would have taken by descent; that the devise, therefore, was void and she took by descent under the law, and not by the will. It is this question which is now before us for determination.

Undoubtedly it is the rule of the common law, yet in force in the District of Columbia, although abolished in England by statute, that, when there is a devise by a testator to his heir of an estate, the same in quality and quantity which the heir would have taken by descent, if there had been no will, the latter takes as heir, and not as devisee; and the devise is void. But in order that this rule should be applicable, it must appear that the estate is precisely the same, both in quality and quantity.

An estate by descent is necessarily always a vested estate, for the title must accrue, if at all, at the moment of the death of the ancestor. If, as in the present instance, a life estate, has been carved out, and it is a reversion that is claimed to have descended to the heir or heirs, that reversion is necessarily a present actual interest vested at the moment of the death of the person last seized, notwithstanding that the possession is postponed. And even though various interests may be interposed, contingent, conditional or other interests, if there is in fact a reversion by operation of law to the heirs of the person last seized, whether that reversion ever becomes operative by enjoyment or not, the reversion itself is an absolutely vested right at the moment of death.

Now, a contingent remainder or an executory devise is not the equivalent of a vested right either in quantity or quality; nor is a vested remainder in a larger or smaller share of the property than would have come by descent the equivalent of a reversion; nor is descent through intermediate persons the equivalent of descent from a more remote

ancestor. The true criterion by which to determine the question is, whether, if there had been no will, or the devise was eliminated from the will, the proposed devisee would have taken precisely the same benefit by descent as is given by the devise. If he would have so taken he is in by descent; otherwise he takes as devisee. *Allen* v. *Heber*, 1 W. Blackstone, 22; 1 Salkeld, 242; *Barnitz* v. *Casey*, 7 Cranch, 456.

Tested by this rule, it is quite clear that in the present case, Elizabeth Landic did not take the same interest by the will which she would have taken by descent. If we eliminate from the will the clause under which she is supposed to have taken the estate as devisee, she would have taken the reversion of the estate upon the death of her brothers, one-third by inheritance from her father, and two-thirds by inheritance from her brothers. Assuredly, while the property happens to be the same that descended in the first instance from the father to the three children, Elizabeth Landic never could have taken more than one-third of the estate by descent from her father; and a reversion or vested remainder in one-third is not the legal equivalent in any respect of a contingent remainder or executory devise of the whole, which is what she had under the will. The fallacy of the argument on behalf of the appellee lies in the untenable assumption that, when Elizabeth Landic took the estate which she did take under the will, she would have taken the same estate at that time by descent from her father. As we have seen, she took, or would have taken only an undivided one-third part by descent from him. As to the other two-thirds, she would have taken them by descent from her brothers; and the father, as to them, would only have been a remote ancestor.

Counsel for the appellee, in support of his contention, cites the cases of *Clerk* v. *Smith*, 1 Salkeld, 241; *Chaplin* v. *Leroux*, 5 Maule & Selwyn, 14; *Manbridge* v. *Plummer*, 2 Mylne & Keen, 93; *Whitney* v. *Whitney*, 14 Mass., 90, and *Sedgwick* v. *Minot*, 6 Allen, 171. We have examined all these cases very carefully; and we fail to find in any of them anything to support the claim made on behalf of the appellee.

In the case of *Clerk* v. *Smith*, 1 Salkeld, 241, there was a charge upon land, and subject to the charge a devise of the land to the heir-at-law. Precisely the same estate was given by the devise which would have vested in the heir if the devise had been eliminated from the will; and, of course, the donee was in by descent, and not by the will. The making of the charge, or the carving out of a life estate, has nothing to do with the matter. The question is, whether, subject to the charge, or to the life estate, or such lesser or determinable estates as may have been carved out, the devise to the heir then gives him the same interest which he would have taken by descent. If it does, the devise is void, and the heir takes the interest, whatever it is, by descent.

The case of *Chaplin* v. *Leroux*, 5 Maule & Selwyn, 14, was also a case where there was a devise to an heir, subject to a charge, of the same precise estate which he would have taken as heir without the devise; and it was held that he took as heir. The contention in both of these cases was that the charge upon the estate affected the interest of the donee. But this was a misapplication or misunderstanding of the rule on the subject. The rule is not that the person takes by descent, rather than by purchase, if he would have taken the estate as heir in the event that no will had been made; but that, if a devise in a will, with or without previous charges or other estates carved out, gives to the devisee the precise estate which he would have had by descent, if that devise were blotted from the will, then he is in by descent, and not as devisee.

In the case of *Manbridge* v. *Plummer*, 2 Mylne & Keen, 93, a testator had devised a life estate to his wife, with remainder to his granddaughter, who was his sole heir-at-law; and remainder over, in the event of her death before she reached the age of twenty-one. She reached the age of twenty-one, and married; but died without issue. The question was, whether the contingent remainder over, which never became operative, could prevent the previous devise to the heir from becoming void. It was held by the Master

of the Rolls (Sir John Leach) that a condition could not affect the estate differently from a charge, and that the donee took by descent, and not by the devise.

In the case of *Whitney* v. *Whitney*, 14 Mass., 90, a testator, after devising his estate to his wife for life, directed that upon her death it should be distributed by law as though it had not been devised. It is difficult to see how in this case the courts could have held otherwise than that the estate vested in the heirs by descent and not by purchase.

In the case of *Sedgwick* v. *Minot*, 6 Allen, 171, it appears that a testatrix devised her estate to a trustee in trust to manage it and to pay the income in equal shares to her two daughters for their lives; and upon their death, or the death of either, to convey their respective shares to such persons as they should appoint by will, and in default of appointment, to convey to their heirs-at-law. One of the daughters died without making any appointment, and leaving surviving her her husband and two sons. One of these sons died soon after his mother, unmarried and without issue. It became necessary to determine whether this deceased son had taken the estate which became vested in him by inheritance from his grandmother, or by the devise in her will. It was held that he took by descent. But it is quite apparent that if the clause in the will under which it was claimed that he took, were wholly eliminated from the will, he would have taken the same precise interest by descent; and the decision is in full accordance with the criterion which has already been stated.

No one of these cases militates against the view which we have taken of the present controversy. Indeed, there would seem to be no question whatever about the rule of law. The question is in each particular case, whether the estate sought to be given by devise is, under the circumstances, the same precise estate that would have come to the person without the devise. If it is, the devise is void; if it is not, the devise is good; and the donee holds as purchaser, and not by descent.

And inasmuch as we are of opinion that, in the present case, the estate taken by Elizabeth Landic under her father's will is substantially and radically different from the estate which would have come to her by descent from him, we must conclude that she took that estate by purchase as devisee and not by descent as heir.

This conclusion, in accordance with the understanding between counsel in the cause entered into in open court, will dispose of the whole case. For it is agreed between them in view of the authoritative decision of the Supreme Court of the United States, in the case of *Barnitz's Lessee* v. *Casey,* 7 Cranch, 456, that it is impossible to sustain the decision of the lower court in this case on the question of the inheritance from Elizabeth Landic, on the assumption that she held the estate by purchase as a devisee, and not by descent. In pursuance of the case of *Barnitz* v. *Casey* and of the agreement of the parties by their counsel, holding, as we do, that Elizabeth Landic took by purchase, and not by descent, we must hold further that the complainant in this cause became entitled to the estate that was in Elizabeth, and that he is entitled to the relief prayed for by him in the bill of complaint.

*The decree of the court below must, therefore, be reversed, with costs; and a decree will be entered here for the complainant.*