## DALLAM *vs.* DALLAM's Lessee.—June, 1826.

M, by will devised to "R & J, and to their heirs and assigns, forever, as te-nants in common, equally to be divided between them, all that tract of land called P. F; but if either of them dies before *the age of* 21 *years, and without issue,* then I will that one equal half part of the said land be held and enjoyed by G, his heirs and assigns, forever; and in case the said R & J should *both die before the age of* 21 *years as aforesaid, and without issue,* then I give and devise the whole of *P. F* to the aforesaid G, his heirs and assigns, forever."—*Held,* That R & J took, under this devise, an estate in fee in the land devised, defeasible upon their dying before the age of 21, and with ɬ issue, and to become absolute either on their reaching that age, or dying under that age, leaving issue.

A limitation over on a dying *without issue generally*, when applied to real estate, means an indefinite failure of issue; though it is otherwise in bequests of personal property.

In order to effectuate the intention of the testator, the word *or*, will be construed *and*, or *and*, *or*.

APPEAL from *Harford* County Court. Ejectment for a tract of land called *Palmer's Forest*. Plea, not guilty, and issue. A verdict was taken for the plaintiff, subject to the opinion of the court on a case stated, (which is set out in the opinion delivered by this court,) and which raised the question as to what estate *Josias Dallam* took under this devise in the will of *Frances Middlemore*, dated the 11th of August 1755.— "I give and devise unto the aforesaid *Richard Dallam* and *Josias Dallam*, and to their heirs and assigns forever, as tenants in common, equally to be divided between them, all that tract of land called *Palmer's Forest*, lying on the west side of *Swan creek; but if either of them dies before the age of twenty-one years, and without issue*, then I will that one equal half part of the said land be held and enjoyed by *Gouldsmith Garretson*, (son of *George* and *Martha Garretson*,) his heirs and assigns, forever, to whom I give and devise the same accordingly. And in case the said *Richard Dallam* and *Josias Dallam* should both die *before the age of twenty-one years as aforesaid, and without issue*, then I give and devise the whole of *Palmer's Forest* to the aforesaid *Gouldsmith Garretson*, his heirs and assigns, forever." The County Court, [*Ward*, A. J.] was of opinion, that *Josias Dallam* took only an estate tail under this devise, and gave judgment for the plaintiff. From that judgment the defendant appealed to this court.

The cause was argued at the last June term before BUCHANAN, Ch. J. and EARLE, STEPHEN, and DORSEY, J.

*R. Johnson*, for the Appellant, contended, that by the true construction of the devise in question, *Josias Dallam* took a fee simple interest, descendible, on his death in 1820, to his children equally. He cited *Barnitz's Lessee vs. Casey*, 7 *Cranch*, 456, 468, 469. *Brogden vs. Walker's Ex'r. &c.* 2 *Harr. & Johns.* 285. *Todd et ux. vs. Pratt*, 1 *Harr. & Johns.*

465. *Hauer vs. Sheetz*, 2 *Binney*, 532.    *Barker vs. Suretees*, 2 *Stra.* 1175.    *Frammingham vs. Brand*, 1 *Wils.* 140; and *Thrustout vs. Denny*, *Ib.* 270.

*Mitchell*, for the Appellee.    The parties in this case are two sons of *Josias Dallam—William M. Dallam*, the eldest, and heir in tail, if *Josias Dallam* took an estate tail under Mrs. *Middlemore's* will.    There are *five* classes of gifts in the will to *Josias Dallam*, who appears to be the *first* object of bounty of the testatrix, and after his death, his issue, and after his issue spent, then *Gouldsmith Garretson* in preference to the collateral heirs at law.    All the devisees and legatees, from the face of the will, are evidently nephews and nieces of the testatrix.    Who her heir at law was does not appear.

1. This is a good *remainder*, created at the same time with the particular estate tail, and by the same instrument.    The remainder-man was *in esse*, in whom it could vest, and to take effect *eo instanti* the particular estate, determined by failure of issue of the first devisee in tail.    No fee was limited on a fee; for the first limitation was reduced to an estate tail by use of the subsequent word *issue*.    Where a devise over *can* be upheld as a *remainder*, it shall never be construed an *executory devise*.    2 *Fearne*, 210, 211, 2, 3, 4.    3 *Com. Dig.* tit. *Devise*, (N. 15, 16, 17,) 448, 450.    *Tenny vs. Agar*, 12 *East*, 263, 264.    *Purefoy vs. Rogers*, 2 *Saund.* 388.    *Plunkett vs. Holmes*, Sir *T. Raym.* 29.    *Doe vs. Morgan*, 3 *T. R.* 763.    Remainders tend less to perpetuity than executory devises, and in this country emphatically ought to be preferred, as those may be barred by fine, &c. but executory devises cannot.    The legislature of this state, by abolishing estates tail, did not intend to favour executory devises, which tend to perpetuities more strongly.    It is said in *Fortescue*, that executory devises began soon after the stat. 29 *Hen. VII.*    In *Strange*, 130, that they began in the time of *Elizabeth*.    In *Porter vs. Bradley*, 3 *T. R.* 146, by Lord *Kenyon*, that they began in the time of *Charles I;* yet Lord *Kenyon* in that case calls *Pells vs. Brown*, which was decided in the time of *James I*, the *magna charta* of this branch of the law.

2. The intent of the testator is the pole-star to guide courts in the construction of a will. That in favour of the *first devisee* is subordinate to the *general* intent, and must yield if inconsistent with it. Such *intent* must be subservient to the rules of law; and if technical words are used which have been long settled as rules of real property, they must receive a technical construction. The rule is that the use of the word *issue*, in reference to a devise by word *heirs*, restrains the broad import of the word *heirs* to the particular heirs included within the word *issue*. Thus a devise to A, and his heirs and assigns forever, but if he die without issue, then over to B in fee, is always construed an estate tail in A, as the real intent of the devisor. And this whether such a devise be to a *stranger*, or to a relation of the first devisee, or the testator. *Secus*, if devise over be upon the devisee's death without *heirs*. In that case there is a distinction between a devise over to a relation or to a *stranger*. Hence it is an universal rule, subject to no exception—wherever an estate is devised for life or in fee, and an estate over is limited after dying without issue, or without heirs of the body, &c. of the first taker, the first devise is modified and explained by the subsequent words, and is either enlarged in the first instance, or restrained in the latter, to an *estate tail*. *Porter vs. Bradley*, 3 *T. R.* 143. 3 *Com. Dig.* 428. 6 *Cruise's Dig.* 269, 270, and cases there cited. *Price vs. Huntt, Pollexf.* 645. *Clache's* case, *Dyer*, 330, b. `Doe vs. Rivers*, 7 *T. R.* 272. *Forth vs. Chapman*, 1 *P. Wms.* 663. *Hawley vs. Northampton*, 8 *Mass. Rep.* 43. The validity of the devise over has no influence upon the construction of the words limiting the *quantity of estate* given to the first taker. The first words are modified and explained by the restrictive words in the subsequent clause, notwithstanding the devise over may be void. As a limitation over upon an indefinite failure of issue is void as an executory devise, yet it may be good as a remainder upon the estate tail by implication. 2 *Fearne*, 182. *Brown vs. Jervas, Cro. Jac.* 290. 6 *Cruise*, 270, *s.* 8.

3. Other conditions, annexed to the dying *without issue*, do not restrain the legal import of these words as to the quantity of estate of the first taker: but the word *issue* is still explana-

tory and restrictive of the word *heirs*, as to the line of heirs intended, and will modify the first devise in fee, and reduce it to one in tail, although this contingency may have *any other* added to it to limit and control the *period* when the devise over is to take effect, or to be defeated. Thus, if he die without issue *and unmarried*, after a devise in fee—Held to reduce the fee to an estate tail; as in *Jackson vs. Billinger*, 18 *Johns. Rep.* 369. So to A, and his heirs, and if he die without issue, *after paying £100 to B*—Held, an estate tail in A. *Wilson vs. Dyson*, Sir *T. Raym.* 425. 3 *Com. Dig.* 428. So, if he die without issue, *living B. Clache's* case, *Dyer*, 331. a. So *if he die without issue and under* 21. *Soulle vs. Gerrard, Cro. Eliz.* 525. *Hilliard vs. Jennings, Cro. Jac* 415. Even in *personalty. Roosevelt vs. Thurman*, 1 *Johns. Cha. Rep.* 227, 228. *Cruger vs. Heyward*, 2 *Desauss.* 112. So *White Acre* to A, and *Black Acre* to B, and their heirs, forever; but if either die under 21, and without issue, the survivor to be heir to the other—Held estates tail. *Chadock vs. Cowley, Cro. Jac.* 695. *Pollexf.* 487. 6 *Cruise*, 270. *Collinson vs. Wright*, 1 *Siderf.* 148. 4 *Bac. Ab.* 251, 294. 2 *Fearne*, 390. So, if he die without issue in the lifetime of his sister B. In every case of an executory devise there are two distinct questions, 1. What quantity of estate the first taker takes under the will; and this depends on the import of the technical words used. 2. What is the period limited by the will for the vesting of the executory devise. This is a mere question of *policy*, having no bearing on the technical terms.

4. The will must in all cases be construed according to its *prospective* import, and with reference to all *possible* contingencies *in futuro*. It must speak from the CREATION of the *estate*, and is never to be modified or varied in its construction by subsequent events and accidents. *Goodman vs. Goodright*, 2 *Burr.* 878, per Ld. *Mansfield.* 6 *Cruise Dig.* 449. 2 *Fearne*, 159, 160. 3 *Com. Dig.* tit. *Devise*, 450. Though this rule is acknowledged by all judges, yet they do in fact construe the will from the subsequent event, by holding the devisee tenant in fee simple absolute *when he attains* 21, if the first limitation is to him in fee, with a devise over on his dying under 21, and without issue. Such was the case in *Barnitz Les-*

*see vs. Casey,* 7 *Cranch,* 426. Such was the case of *Hauer vs. Sheetz,* 2 *Binney's Rep.* 532; though the decision in the latter case was upon the *charge* laid on the devisee. So the *English* cases in the time of Ld. *Hardwicke,* and several cases since. All of these cases were adjudged upon *subsequent events,* after the *creation* of the estate.

5. Where the devise over is made to depend upon two or more contingencies, whether these are connected by the copulative *(and,)* or disjoined by the disjunctive *(or,) all* the contingencies must happen—*all* must concur to give effect to the devise over. If either fails to happen, the devise over is defeated. Thus in this case, if the first devisee attains full age, the limitation over is defeated, although he should die without issue. So if he leave issue, though he should die under 21, it is sufficient to defeat the contingency over, and the first devisee leaves an absolute estate tail to his issue, which fails only on general failure of issue, and then the estate reverts to the heir at law of the devisor. *Wright vs. Kemp,* 3 *T. R.* 472. *Fairfield vs. Morgan,* 5 *Bos. & Pull.* 38. *Doe vs. Jessep,* 12 *East,* 288. *Hauer vs. Sheetz,* 2 *Binney's Rep.* 544, per *Tilghman,* Ch. J. And the courts will construe the particles *or* and *and,* one for the other alternately, so as to carry this rule into effect in favour of the issue of the first devisee, and to prevent his disinherison by a literal interpretation of the devise. *Fairfield vs. Morgan,* 5 *Bos. & Pull.* 38. If *both* must *concur,* and *one* of these is *too remote,* or *can possibly* in any future state of things be too remote, the limitation over cannot take effect as an executory devise; and in such case it must either fall altogether, or must be construed a *remainder,* if the *particular* preceding estate be sufficient to support it as a *remainder.* For the only contingencies upon which a good executory devise can be limited, are such as *must necessarily* happen within the prescribed period, and which cannot *possibly* happen after a life or lives in being, and 21 years and a fraction of a year. Now if *one* of these contingencies be the death of the *first devisee without issue,* and such devisee should *leave issue* upon his death under 21, the failure of that issue is a condition precedent to the estate of the executory devisee; and as such issue may not fail until after the prescrib-

ed period, or may possibly endure until the prescribed period is past, the devise over is not a good executory devise, but must take effect as a remainder, or not at all. The cases then that oppugn this construction are, either, 1. Those cases where the contest was between the executory devisee, and the heir of the first devisee, which do not apply to this case, where the contest is between the eldest and younger son of the first devisee, and depends on the quantity of the estate taken by the first taker, and no question arises as to the validity of the devise over. 2. Those cases arising on marriage articles, and family settlements, where the issue are considered as purchasers, and the words used are those of both parties. 3. Those cases where subsequent limitations were to *survivor*, or other relation of devisor or devisee, and where such limitations were considered as restrictive of the general import of the phrase "dying without issue." 4. Cases relating to *personal* property, where words have been considered as restrictive of the limitation over within the prescribed period, which would not be so construed in reference to real estate. 5. Cases of trusts which though partially too remote, equity will execute by the rule of *cy pres* as near to the apparent intent as the rules of law will admit. Or, 6. Cases where the devises have been construed from the event, and not from the death of the devisor, when the estate was created.

All these cases are to be laid out of view as inapplicable to the present cause.

In the case of *Long vs. Blackall* in 1797, 7 *T. R.* 98, Lord *Kenyon* lays down the true rule as to executory devises. "It is an established rule," says he, "that an executory devise is good *if it must necessarily* happen within a life or lives in being, and twenty-one years and the fraction of another year, allowing for time of gestation." So in *Goodtitle vs. Wood*, in 1740, in C. B. 7 *T. R.* 99, *note* (a,) Lord Chief Justice *Willes* had recognized the same rule, and says, executory devises to be good must be so limited, that "the contingency *must* happen within the compass of a life or lives in being, or a reasonable number of years. So extended to a child in *ventre sa mere*, as that contingency *must necessarily happen* within less than nine months after the death of a person in being." So

Mr. *Hargrave*, in his Law Tracts, 1 vol. 518, says, "every contingency, which is not such that if it ever happens it *must necessarily* happen within the period prescribed, is too remote for an executory devise." Yet Lord *Kenyon*, in *Roe vs. Jeffrey*, in 1798, 7 *T. R.* 591, says, "nothing can be clearer in point of law, than that if an estate be given to A in fee, and by way of executory devise an estate be given over which *may* take place within a life or lives in being, and twenty-one years and a fraction of a year afterwards, the latter is *good* by way of executory devise!" Hence the spurious construction that has sprung up in modern cases, that the devisee, where the limitation was first in fee, and then over upon his *dying without issue and under twenty-one*, took a *fee simple* on his attaining full age, otherwise not; a construction not arising from the words of the will, but from *the event*—from *subsequent accidents*, by substituting *may* for *must*. It is said that such a limitation over is good, because the contingency *may* happen by his death under age, which is not too remote. But the *true rule* is, that it *must necessarily happen* within the prescribed period. Now it is clear, that if the first devisee should happen to die *under twenty-one*, having first married and had *issue*, the contingency has *not* happened at his death, as to his *dying without issue*, unless these precise words are to receive a new and unauthorised interpretation in this case from that which they have received both in courts of law and equity for more than four centuries; which is, that *he only dies without issue*, when the *whole line of descendants* is *spent*. In this hypothetical case, therefore, the first devise is an absolute estate in the first devisee, *descendible to his issue, although he dies under twenty-one;* and this is nothing more than an *estate tail*. It is construed an estate tail, either, 1st. Because the limitation over is upon an indefinite failure of issue alone and unrestricted, where issue is left by a devisee dying under age, and so too remote to be a good executory devise, and so *must* be construed an *estate tail* to give the remainderman any benefit from the limitation over. Or, 2dly. If the indefinite import of these words is to be considered as restrained by the additional contingency of his *dying under age*, and so *may* take effect as an executory devise. Still it may take effect also as a *remainder*, in case of

his death under age, vesting in possession only *on failure of the descendants* of the child born during the devisee's minority. And then the rule above stated applies, that courts *must* construe it a *remainder.* The rule being imperative that, *judges* shall wield the power of the context in aid of constructive remainders, and against executory devises. Yet courts, in modern times, though they dare not deny this rule, do in effect lean against it in their construction, and in favour of executory devises, and have so done, with few exceptions, since the case of *Pells vs. Brown, Cro. Jac.* 592. In that case the restriction was applied by the devisor to the words, "dying without issue, *living W.*" fixing the period when the issue was to fail. Whereas in *this* case the *dying under twenty-one, and without issue,* has no words of restriction *as to the failure of issue;* for if *issue is born,* even after the death of the first devisee under twenty-one, (he having left his wife *ensient,*) that issue shall take to the exclusion of the devisee over. How long shall the devisee over be postponed in this case? It may be answered, until the failure of this line of descendants, and *no longer;* which gives effect to the general intent of the testator to provide for the devisee over as the *next* favourite to the first devisee. But it is said by the counsel opposed to me, that he shall be postponed *forever,* and he will construe it an executory devise, in order to defeat the limitation over, and the general intent; and in order to support it as an *executory devise,* he construes the first devise as an *estate in fee simple,* though the very same words in other cases are construed as an *estate tail*— the general words being restrained by the subsequent word *issue.* It follows, that by our construction, effect is given to the *remainder over;* by the opposite construction the remainder over is defeated in favour of collateral relations of the first devisee, who never entered into the view of the devisor. So in devises of chattel interests, if between the term of the ancestor, and the estate of his heirs, there is no vested freehold remainder, the heirs can only take by way of *executory devise,* which *ex vi termini* implies an estate *not executed* in the ancestor." *Perrin vs. Blake,* per Sir *W. Blackstone,* J. *Hard. L. T.* 505. Here is a freehold estate vested in the first devisee, and executed in him, and a

remainder "passing out of the devisor at the same instant to the devisee over who is *in esse.* The case of *Collinson vs. Wright,* 1 *Siderf.* 148, cited in 2 *Fearne,* 390, and in 4 *Bac. Ab.* 251, 294, decided in 1663, is strong in support of our construction. There the devise was to A, the testator's son and heir, and if he died before his age of 21 years, and without issue of his body *then living,* then remainder over. It was held he took a fee, because the estate tail was limited to *commence* upon a *subsequent contingency.* Here the failure of issue was not too remote, as it was to happen upon his leaving none *living at his death;* but the words "if he die under 21," were not *per se* sufficient to restrict the words "without issue," within the definite period prescribed by law. The first case upon this subject arose immediately after the birth of executory devises, and the true distinction was there settled by three judges of the King's bench against one *Clache's* case, 3 *Dyer,* 331, (15 *Eliz.* 1573.) Devise to daughter A, and her heirs forever, and another devise to daughter B, and her heirs forever; and if A should *die having no issue, living B,* then her share to B in fee. If B die under 16 and living A, then B's share to go to A in fee. If *both* die having no issue, the whole to C and D, &c. This was held by three justices to be an *estate tail* in the daughters—*Dyer* dissenting. "The opinion of the three judges in this case," says Mr. *Cruise,* (6 *Cruise's Dig.* 270,) "has been confirmed by several subsequent determinations." In *Collinson vs. Wright,* decided about a centu ry afterwards, the decision rested upon *Clache's* case as good authority. 1 *Siderf.* 148, (15 *Car. II.* 1663.) 4 *Bac. Ab.* 251, 294. 2 *Fearne,* 390. Devise to one of four sons, and *his heirs forever,* and if he die within age, or without issue, to his three other sons, equally to be divided. The devisee had a daughter, and died within age—Held by the court unanimously, he took an estate tail that descended to his daughter. *Soulle vs. Gerrard, Cro. Eliz.* 525, (37 *Eliz.* 1595.) S. C. *Noy,* 64. S. C. *Moor,* 422. This case is of *very high authority,* and *fully in point* for the construction we contend for. It is cited by Lord *Holt,* near a century afterwards, as settling this devise to be an estate tail in *Hilliard vs. Jennings,* 1 *Ld. Raym.* 505, and in *Price vs. Hunt,* 1 *Pollexfen,* 645; by

Justice *Buller*, as good authority, in *Wright vs. Kemp*, 3 *T. R.* 474; by *Le Blanc*, J. in *Denn vs. Remeys*, 9 *East*, 376, and by *Cruise*, in 6 *Cruise's Dig.* 270. Devise to son *John*, and his heirs, and if he die without issue, devise over to nephew in fee—Held an estate tail in *John*, and no fee. *Brown vs. Jervas*, *Cro. Car.* 290, (8 *Jac.* I.) Devise over after a fee, upon the contingency of default of *heirs* of devisee in life of collateral heirs. Held an estate tail if devisee over a collateral heir of devisor or devisee. Showing an intent to confine the limitation to *lineal heirs*. *Webb vs. Herring*, *Cro. Jac.* 415, (13 *Jac. I.)* So *Tyte vs. Wyllis*, *Ca. temp. Talb.* 1. *Nottingham vs. Jennings*, *Dig. Ch. Rep.* 35. *Com. Rep.* 81. 3 *Com. Dig.* tit. *Devise*, (N. 5,) 428, 430. So *Morgan vs. Griffiths*, *Cowp.* 234. In *Dutton vs. Engram*, *Cro. Jac.* 427, (15 *Jac. I*,) the devise was to wife for life, then to *John* and *his heirs*, on condition he should pay an annual rent thereout; and if *John* die without heirs of his body, the land should remain to *Stephen*, and the heirs of his body—Held, that *John* took an estate tail. Devise to A, and his heirs, and the other land to B, and his heirs, and if B dies without issue, living A, to A, and if *both* die without issue then to D, is an estate tail in A. 1 *Roll. Ab.* 839, l. 25. 3 *Com. Dig.* tit. *Devise*, (N. 5,) 428. *King vs. Rumball*, *Cro. Jac.* 448. 1 *Fearne*, 369. 6 *Cruise's Dig.* 284. Devise to three daughters in fee, one to be the others heir—an estate tail. In *Chadock vs. Cowley*, *Cro. Jac.* 695, (22 *Jac. I.*) *Pollexf.* 487. 4 *Bac. Ab.* 257, 258. 6 *Cruise Dig.* 270, the testator devised his lands in *B* to *Thomas* his son, and his heirs forever, and his lands in *E* and *L* to his son *Francis*, and his heirs forever. The survivor of them to be heir to the other, if either die without issue, (i. e. if *Thomas* die without issue, living *Francis*, or *Francis* die without issue, living *Thomas*—then over in fee.) Held an *estate tail* in each son, and not a fee; and this too immediately after *Pells vs. Brown*, which held this to be a *fee. Cro. Jac.* 590. And it was said by the judges in *Chadock vs. Cowley*, if it had been a devise in fee, and *"if he died without issue before such an age,"* then it would have been a *contingent devise in tail*, if it had happened, but not otherwise—But here an absolute estate

tail. In *Collinson vs. Wright,* the case of *Chadock vs. Cowley* was relied on by the court, and approved as good authority long afterwards. So devise to son C an annuity, "and if my son C shall die before any issue of his body, so that my land descend to D before he attains 21, then my executors to occupy till D is 21,"—gives an estate tail to C by implication. *Newton vs. Bermandine, Moor,* 127. 6 *Cruise's Dig.* 282. Here is a double contingency—dying without issue, and also before D attains 21 years of age. In *Hilliard vs. Jennings,* 1 *Ld. Raym.* 505, (11 *Wm.* III.) 1 *P. Wms.* 557. *Carth.* 514—the devise was to A, and his heirs forever, and if he die without issue of his body, or before 21, then to B. The first devisee attained 21, and died without issue, devising away the land by a will with two witnesses only. Lord *Holt* appears to have considered this a clear estate tail in A; though the case went off upon the statute of frauds. Devise to daughter A all the testator's real and personal estate, to hold to her and her children, or issue forever; and *if she should die leaving no child,* or, *if her children should die without issue*—Held an estate tail in A. *Wood vs. Baron,* 1 *East,* 259. 6 *Cruise's Dig.* 281. Devise to A, and the heirs of his body, and if he die under 21, and without issue, to B— Held an estate tail in A *Roe vs. Scott & Smart,* 2 *Fearne,* 204, (27 *Geo.* III.) So that a limitation over is a good remainder. notwithstanding the contingency annexed of dying under 21—Showing that this does not restrain the indefinite failure of issue. If A die without heirs before 21, so that the estate falls to his sister, is an estate tail in A. 3 *Com. Dig.* 429. 2 *Levintz,* 162. If A die before he has issue, *during the minority of B,* was held an estate tail in A, though a double contingency. *Moor,* 127. 3 *Com. Dig.* 429. This is a very strong case in favour of our construction. In *Kirkpatrick vs. Kirkpatrick,* 13 *Ves.* 475, Lord *Eldon* held that there *might* be an *indefinite failure of issue,* notwithstanding the words of the will were—"If either die under 21, and without issue." But in that case there were words sufficient to tie up the failure of issue within the period prescribed, and as it was *personalty,* it became absolute at 21. *Tenny's Lessee vs. Agar,* 12 *East,* 253, (in 1810,) is a strong case for our

construction.   There, *Bayly*, J. says, if son had died leaving
issue, which issue had died immediately after, it was the testa-
tor's meaning that the devise over should not fail absolutely;
and yet it must have failed if the contingency depended on the
son's dying without issue *at the moment of his death*.   The
meaning was, as in most cases it is, that the devise over shall
take effect when the son dies and his issue fails, let it fail when
it may, whether before, or at, or after the son's death.   And
this is what we understand by an indefinite failure of issue.
*Anderson vs. Jackson*, 16 *Johns. Rep.* 412.   Devise of real
estate to A, and if he die under 21, and without issue, to B,
in fee—An estate tail in A.   *Roosevelt vs. Thurman*, 1 *Johns.
Ch. Rep.* 227, 228.   *Cruger vs. Heyward*, 2 *Desaus. Eq.
Rep.* 112.   *Howell vs. Tilden & Blay*, in the court of appeals
of *Maryland* in 1735.   *Smith vs. Smith*, 2 *Harr. & Johns.*
314   *Jackson vs. Billinger*, 18 *Johns. Rep.* 369.   As to the
case of *Barnitz Lessee vs. Casey*, 7 *Cranch*, 462, that was
decided on the want of proof of actual ouster, and the case
did not turn on the quantity of estate taken by *John M‘Con-
nel*.   It was immaterial whether he took a fee or an estate
tail, as both he and *J. B. Hammond* died under age, and
without issue, and their collateral heirs were heirs of the tes-
tatrix.   The cases cited by Mr. Justice *Story* are not authori-
ties for the extra judicial *dictum*, that *John M‘Connel*, on at-
taining 21, became vested with a *fee simple absolute*.   He
cites *Framingham vs. Brand*, 1 *Wils.* 140, decided in 1746,
which merely decided that *or* might be construed *and*, but it
does not appear whether the plaintiff claimed as heir to the de-
visor, or to the first devisee.   *Thurstout vs. Denny*, 1 *Wils.*
270.—Here was a marriage settlement, and an appointment
by a subsequent will.   The question was, whether the power
was well executed, and whether the executory devise was too
remote?   It could not be a good remainder, for it was not created
at the same time with the life-estate, nor by the same instru-
ment. .  *Goodman vs. Goodright*, 2 *Burr.* 872, was also a
marriage settlement, and there was no question as to the *quanti-
ty of estate*, nor was it decided whether it was an executory de-
vise or a contingent remainder.   In the first case, Lord *Mans-
field* held it too remote.   In the latter, that it was barred by

fine and recovery. *Cook vs. Gerrard*, 1 *Saund.* 174, is not at all in point, but on another subject. *Baker vs. Surelees*, 2 *Stran.* 1175.—"If he die before 21, or marriage, and without issue," then over. The grandson attained 21, and died without having been married. Held, that the plaintiff might recover, claiming under him. It does not appear how he claimed, whether under a fine and recovery suffered by the grandson, or as heir to the first testator, and also heir to the grandson, the first devisee, who was also heir to the testator. And the devisee over could not be entitled, as the contingencies had not both happened upon which alone he was to take. So that Mr. Justice *Story's* opinion is unsupported by the cases he cites. And as to the case of *Hauer vs. Sheetz*, 2 *Binny*, 532, there the opinion of the court proceeds on the ground of a personal charge upon the first devisee, which carries a fee, and rebuts the legal implication of a less estate. And all the other cases in *Great Britain*, and in the several states, where the words "if he die under 21, and without issue," after a fee, are held to create a good executory devise, are founded upon *Pells vs. Brown*, which case is impeached in *Plunket vs. Hornes*, 1 *Siderfin*, 47, and in *Anderson vs. Jackson*, 16 *Johns. Rep.* 406, 407, by Chancellor *Kent.* And the construction was made from subsequent events, and not from the words of the will at the time of the creation of the estate. Such cases are not entitled to as much respect as the old established rules of the common law, however venerable may be the names which have at times appeared to sanction these modern innovations.

*Curia adv. vult.*

BUCHANAN, Ch. J. at the present term, delivered the opinion of the court. On the 11th of August 1755, *Frances Middlemore* made her will, the second clause of which is in these words:—"I give and devise unto the aforesaid *Richard Dallam* and *Josias Dallam*, and to their heirs and assigns forever, as tenants in common, equally to be divided between them, all that tract of land called *Palmer's Forrest*, lying on the west side of *Swan* creek; but if either of them dies before the age of twenty-one years, and without issue, then I will that one equal half part of the said land he held and enjoyed by *Gould-*

*smith Garretson,* (son of *George* and *Martha Garretson,*) his heirs and assigns, forever, to whom I give and devise the same accordingly. And in case the said *Richard Dallam* and *Josias Dallam* should both die before the age of twenty-one years as aforesaid, and without issue, then I give and devise the whole of *Palmer's Forrest* to the aforesaid *Gouldsmith Garretson,* his heirs and assigns forever."

*Richard Dallam* and *Josias Dallam* entered upon and took possession of the land so devised to them, and caused it to be divided. *Richard* married and had two sons, *John* and *William,* now living, and died in the year 1820, aged 74 years, after having conveyed his part to his son *John.* *Josias* sold all his part, except about 125 acres, the premises in question, of which he died seized in the year 1820, at the age of 72 years, leaving a number of children, now living, of whom *Francis J. Dallam,* the tenant in possession is one, and *William M. Dallam,* the lessor of the plaintiff below is another, claiming as eldest son and heir in tail. And the question raised is, what estates did *Richard* and *Josias Dallam* respectively take under that devise—estates in fee simple, or estates tail?

It would be an unprofitable, and almost endless task, to go through an examination of the multitude of authorities in relation to this subject; a few only of which will therefore be noticed in the exposition that is proposed to be made of the principles governing the decision of this case.

The case of *Soulle vs. Gerrard, Cro. Eliz.* 525, was much relied upon, in the ingenious argument of the counsel for the appellee, to show that *Richard* and *Josias Dallam* took estates tail only. The devise in that case was to *Richard,* one of the devisor's sons, and his heirs forever; and if he died within the age of twenty-one years, or without issue, that then the land should be equally divided amongst his three other sons; and it was held that *Richard* took only an estate tail; the whole of the judges being of opinion, that the devise over, so far as it was on his dying within the age of twenty-one years, being after a fee, was void, on the ground that a fee could not be limited by will after a fee. They therefore rejected altogether the contingency of his dying within age, and construed the other contingency of his dying without issue, as being ex-

planatory of the word heirs, and restricting it to mean heirs of his body; and thus virtually reduced it to the case of a limitation over on the single contingency of his dying without issue.

By the ancient common law no remainder could be limited over after an estate in fee simple, nor a freehold be created to commence *in futuro.* But that strictness has been greatly relaxed in favour of dispositions of estates by will, and the settled rule now is, as it has been for ages, that by way of executory devise, a fee simple, or other less estate, may be limited after a fee simple; and the familiar example put in the books, is of a devise to one and his heirs, and if he dies before the age of twenty-one, then over to another and his heirs. In *Soulle and Gerrard* the court went expressly upon the assumption, that that could not be; no distinction was attempted to be taken between a definite and indefinite failure of issue, nor was there the slightest intimation, that the first contingency, of the devisee *Richard* dying within the age of twenty-one, could not have the effect to restrict the subsequent words "without issue," to mean a failure of issue at the time of his death. But the judges, considering the contingency of his dying within twenty-one, as standing in the way of the subsequent words, "without issue," and (if suffered to remain,) preventing their explaining the word "heirs" to mean heirs of his body, and thus to constitute the devise to *Richard* an estate in fee simple, they rejected the contingency of his dying within twenty-one, and construed the will as if it did not contain that provision, but only a limitation over on the simple contingency of his dying without issue. That case, therefore, cannot at this day be relied upon as authority, to show either that there cannot be a good limitation by will after a fee simple by way of executory devise, or that, in the case of a limitation over, on the double contingency of a dying before the age of twenty-one, and also without issue, the contingency "of dying before the age of twenty-one" does not restrict the words "without issue" to mean a definite failure of issue; that is, a failure of issue at the death of the first devisee. On the contrary, it would rather seem, that but for the principle assumed and acted upon by the judges, that there could not be a limitation by will after a fee simple, they would have considered the first contingency of

"dying within the age of twenty-one years," as limiting the second "without issue" to mean a failure of issue at the death of the first devisee; otherwise they would not have felt themselves constrained to reject the first contingency, in order to let in the words "without issue," to explain the sense in which the words "and his heirs forever" were used in the devise to *Richard;* as it was only on the ground that the contingency of his dying within the age of twenty-one would have the effect to restrain the other contingency "of his dying without issue," to a failure of issue at the time of his death, that he could have been held to take an estate in fee simple.

An executory devise, unlike a remainder, needs no particular estate to support it; but no limitation can be good as an executory devise, unless it be on a contingency, that *must* happen, if at all, within a life or lives in being, and twenty-one and a fraction of a year afterwards. And if it be limited in an event, which may not happen within the prescribed limits, as upon an indefinite failure of issue, it is void; for the possibility at its creation, that the event, on which it is made to depend, may not take place within the time allowed, vitiates it from the beginning, no matter how the fact turns out afterwards. Nor can any limitation be construed to operate as an executory devise, where consistently with the rules of law, and the intention of the testator, (which when not contrary to law must always prevail,) it may take effect as a remainder.

It is established by the authority of more than fifty adjudged cases, that wherever there is a devise of real estate to one and his heirs, with a limitation over if he should die without issue; the words "without issue," mean an indefinite failure of issue, that is, not a failure of issue at the time of the death of the devisee, but a failure whenever they shall become extinct, without reference to any particular time or event; if there be nothing in the will showing a different intention on the part of the testator, and restricting the failure to the time of the devisee's death, or to some other time or event.

In every such case, the contingency is too remote to support an executory demise, as the event on which it is made to depend, (the failure of issue,) may not happen within the prescribed limits, a life or lives in being, and 21 years and a frac-

tion of the year afterwards, allowing for the time of gestation. But it is construed to be an estate tail in the first devisee, and the limitation over operates as a contingent remainder, expectant upon the precedent particular estate tail.

But wherever there are expressions in the will restricting the "dying without issue" to a failure of issue, at the time of the death of the first devisee, or to some other time or event which must occur, if at all, within the time allowed for the happening of a contingency, in which an executory devise may be limited, there the first devisee takes an estate in fee simple, and the limitation over is void as a remainder, but good by way of executory devise—as if the words be "without issue living at the time of his death," or "without issue living at a time specified." These are rules, for the construction of wills, so well settled, and so long acted upon, as to have become maxims of the law that are not now to be questioned.

Whether the intention of the testator is always arrived at and gratified by these rules of construction, is not now a question open for examination. In construing a will, the particular words of which have received a settled technical construction, that has become a rule of property, that construction ought to be adhered to and preserved as a fixed and established land mark.

With these principles kept in view, it remains to be examined, by which of those rules the devise before us is to be governed; whether the words "without issue" mean an indefinite failure of issue, or whether they are restricted to mean a failure of issue at the time of the death of *Richard* and *Josias Dallam* respectively.

In *Pells vs. Brown, Cro. Jac.* 590, the devise was of lands by *William Brown*, to his son *Thomas*, and his heirs forever, and if *Thomas* died without issue, leaving *William* his brother, that then *William* should have those lands to him, and his heirs and assigns forever. And it was adjudged that *Thomas* took an estate in fee simple, and that the limitation over to *William* was good as an executory devise; on the ground that the words "without issue," as there used, did not mean an indefinite failure of issue, but were explained and restricted by the words "living *William*," to mean a dying by *Thomas* without issue living, in the lifetime of *William;* and were not

used to qualify the word "heirs" in the devise to *Thomas*, and to show that it was the intention of the testator, to restrain them to heirs of his body, but only to designate an event, on the happening of which the estate in fee simple before devised to him was to determine or be defeated, and the contingent limitation to *William* to take effect—which it was held could only be by way of executory devise, and not as a remainder, which could not be limited after a fee simple.

That is a leading case upon the subject, and is put as an example of a good executory devise, in 2 *Fearne Cont. Rem.* 17, 52. 4 *Cruise on Real Property*, *(Am. Ed.)* 441. *Purefoy vs. Rogers*, 3 *Saund.* 388, *(note 9.)* 3 *Com. Dig.* 431, and referred to in *Porter vs. Bradly*, 3 *T. R.* 146; and *Roe vs. Jeffery*, 7 *T. R.* 592—as the "foundation of this branch of the law;" and that case cannot in principle be distinguished from this. There, the contingency on which the limitation over was to take effect, to wit, a dying without issue in the lifetime of another, was to happen within a life in being; here, within 21 years. And there is no want of adjudged cases, down to the present time, to show in what manner devises such as this have been uniformly construed.

In *Brownsward vs. Edwards*, 2 *Ves.* 243, where the devise was to one in tail, but if he died before 21, and without issue, then over to another, Lord *Hardwicke* held, that the limitation over was good by way of remainder, because an estate tail was capable of supporting a remainder; but that, if the first devise had been to the devisee and his heirs, that construction could not have been made; for where there was such a contingent limitation, the court had not changed "heirs" unto "heirs of the body." In *Walsh vs. Patterson*, 3 *Atk.* 193, the devise was by a father to his son, and his heirs and assigns forever, but in case he died before he attained the age of 21, or without issue, then to the testator's wife, and her heirs. Lord *Hardwicke* said, "he thought it a very plain case; and that if the testator had gone no farther than the first clause, he would have given the son an absolute fee, but then followed the executory part;" but he held it to be a vested estate in fee in the son, and as he arrived at the age of 21, though he died without issue, yet that it did not go over to the mother, but descended to his heirs at

law.  Thus clearly showing, that the words "without issue" were not considered, in such cases, as explanatory of the sense in which the word "heirs" was used in the preceding clause, and as narrowing it down to mean heirs of the body; otherwise the son in that case must have been held to take an estate tail, with a contingent remainder in fee to the mother; but as a mere contingency, restricted to the dying by the first devisee, under the age of 21, and without issue living at the time of his death, by the happening of which the preceding estate in fee was to be defeated, and the limitation over to take effect by way of executory devise.  And in *Framlingham vs. Brand,* 1 *Wils.* 140, reported also in 3 *Atk.* 390, where the devise was by a woman to her son *Robert,* his heirs and assigns forever, and if he should happen to die in his minority, or unmarried, or without issue, then over to her son *Harry* and his heirs, Lord *Hardwicke* said he was clearly of opinion, that it was a fee in *Robert,* with an executory devise, and agreeable to all the cases.  *Barker vs. Suretees,* 2 *Stra.* 1175, is a similar case.

In *Hauer vs. Sheetz,* 2 *Binney,* 532, the devise was to F, his heirs and assigns forever, (subject to a pecuniary charge,) and if he should die under the age of 21, or without issue, then over to P; and it was held, that F took a fee with an executory devise to P, to take effect upon F's dying under age, and without issue.

It will be seen that in all these cases the disjunctive or (or without issue,) is used, and that the only doubt entertained in either of them was, whether that disjunctive could be read (and;) but it was adjudged in each case, that it should, in order to effectuate the intention of the testator; which is, according to the known rule of construction in such cases, established by a course of decisions for centuries down to the present time. *Small vs. Denny,* 1 *Wils.* 270.   *Machin & Vessey vs. Reynolds,* 7 *Serg. & Lowb.* 373; and *Barnitz vs. Casey,* 7 *Cranch,* 456, are free from any difficulty attending the word (or,) the limitation over in each case being on the contingency of a dying under the age of 21, and without issue, dropping the word (or) and using the conjunctive (and,) which is precisely this case.

In the whole of these cases, the words "without issue," were considered as not having the effect to reduce the preceding estate in fee simple to an estate tail, but the dying without

issue was held to be a mere contingency, on the happening of which, it was the intention of the testator that the fee simple before created should determine. The limitation over, could not, therefore, take effect as a remainder, which cannot be limited after a fee. And it could not have been construed to be good, by way of executory devise, except on the ground, that the words "without issue" did not mean an indefinite failure of issue, which would have been too remote to sustain an executory devise, as the contingency in such case might not happen within in the prescribed limits; but that, connected with the preceding words dying within age, or before 21, &c. they were restricted to mean a failure of issue at the time of the death of the first devisee; on the principle of the case of *Pells vs. Brown,* and of *Wilkins vs. Kemeys,* 9 *East,* 366, where the devise was to B, and her heirs, but if she died before A, or without heirs of her body, then to C; and it was held that the devise over to C, could only take effect, if B died before A and without issue. And it does seem that a limitation over, on a dying within age, or under 21, and without issue, must necessarily mean a dying without issue living at the time of the death of the devisee, and being a contingency that must happen, if at all, within the time allowed, it is a good contingency in law to support an executory devise. The plain meaning of such a clause is, that if the party dies before 21, *eo instanti* the fee before given to him shall determine, and the estate pass over to another, provided there be no issue at the time of his death—the dying before 21 and also childless, making together the event on which one estate is to cease, and the other begin— and both must occur, to give life and effect to the limitation over; so that if the first devisee either attains the age of 21, or dying before 21 leaves issue, the fee, before defeasible, thereby becomes absolute, and the limitation over defeated. And it is not like the case of a limitation over on a dying "without issue" generally, which, however a plain man might understand it, is now, when applied to real estate, technically construed to mean an indefinite failure of issue, though the same rule does not extend to dispositions of personal property.

Upon the whole, we think, both on authority and principle, that the words "without issue" in this case, cannot be so con-

strued as to turn the fee simple before devised into an estate
tail, without violating the clear intention of the testatrix; and
that *Richard Dallam* and *Josias Dallam* each took an estate
in fee in the premises respectively devised to them, defeasible
by the event of his dying before he attained the age of 21, and
without issue, but which became absolute on his arrival at the
age of 21. And being a fee in its creation, the limitation over
was void as a remainder, though it would have been good by
way of executory devise, if the contingency had happened on
which it was made to depend; but that not having happened,
the executory limitation over can never take effect. *William
M. Dallam* then, has no title to the land in question as heir in tail;
but his father *Josias*, being seized of an absolute estate in fee sim-
ple, it would, under the act of 1786, *ch.* 45, the act to direct
descents, have descended to his heirs in fee, that is, to all his
children equally, if he had died intestate; and *William M.
Dallam* would have been entitled to an equal share with the
other children in fee simple, and no more.

DORSEY, J. Although much time was consumed in the ar-
gument of this case, it presented for decision but one question,
on which, it is difficult to conceive, how a doubt could remain
on the mind of the learned counsel who had made that full and
elaborate examination of the authorities on the subject, so con-
spicuously displayed before this court. The material facts in the
case are simply these—*Frances Middlemore*, of *Baltimore*
county, in 1755, made her last will and testament, in which
are the following clauses: "*Imprimis.* I give and devise unto
*Josias Dallam*, (son of *William* and *Elizabeth Dallam*,)
and to the heirs of his body, all those tracts of land called
*Fanny's Inheritance* and the *Union*, lying on the north side
of *Swan* creek, near the *Cranberry*; and in default or want of
such issue, to his brother *Richard Dallam*, and to the heirs of
his body; and in default of such issue to *George Gouldsmith
Presbury*, (son of *George Presbury*,) his heirs and assigns
forever. 2dly. I give and devise unto the aforesaid *Richard
Dallam* and *Josias Dallam*, and their heirs and assigns for-
ever, as tenants in common, equally to be divided between them,
all that tract of land called *Palmer's Forrest*, lying on the
west side of *Swan* creek, but if either of them dies before

the age of twenty-one years, and without issue, then I will
that one equal half part of said land be held and enjoyed by
*Gouldsmith Garrettson,* (son of *George* and *Martha Gar-
rettson,*) his heirs and assigns, forever; to whom I give and
devise the same accordingly.    And in case the said *Richard
Dallam* and *Josias Dallam* should both die before the age of
twenty-one years, and without issue, then I give and devise
the whole of *Palmer's Forrest* to the aforesaid *Gouldsmith
Garrettson,* his heirs and assigns, forever.    3dly. I give and
devise unto the aforesaid *Gouldsmith Garrettson,* and to his
heirs and assigns forever, all that tract of land called *The
Grove,* lying near the head of *Musquito* creek.  4thly. I give
and devise unto *Susanna Hall,* daughter of *John* and *Susan-
na Hall,* and to her heirs and assigns forever, all that tract of
land called *Invention,* lying on the west side of *Spesurtree*
creek.    5thly. I give and devise to *Henrietta Holland,*
daughter of *Francis* and *Susanna, Holland,* and to her heirs
and assigns forever, all that tract of land called *Middlemore's
Angle,* lying on the branches of *Swan* creek.    17thly. I de-
vise the residue of my real estate unto the aforesaid *Richard
Dallam* and *Josias Dallam,* their heirs and assigns, as tenants
in common, equally to be divided between them."    These are
the only devises of real property contained in the will.  *Richard*
and *Josias Dallam* both arrived at the age of twenty-one
years, divided *Palmer's Forrest* between them; and *Josias
Dallam* died in 1820, seized under the devise aforesaid of
part of *Palmer's Forrest,* and leaving eleven children, of
whom the appellee's lessor is the oldest son, and the appellant
another of his sons and one of his executors, who were di-
rected by his will to sell the premises in question.

  Did *Josias Dallam,* by the second clause in *Frances Mid-
dlemore's* will, take in a moiety of *Palmer's Forrest* an es-
tate in fee tail? is the only point to be considered.    If yea,
then is the appellee entitled to recover, and not otherwise.  No
lawyer can read this will and hesitate in admitting that it was
drawn with great perspicuity and professional skill, and that
its writer well understood the established and legal import of
the terms and expressions which it contains.    In arriving at
its true exposition, the court must look to the intention of the

testatrix, which they are bound to effectuate, if not inconsistent with the rules of law. Whence is this intention to be collected? Not from mere conjecture, but from the clauses and expressions contained in the will itself. These are to have their plain and popular interpretation. And if formal or technical terms are used, they are to be construed according to their legal import, if such construction contravene not the intention of the testatrix. The devisor having used the words "heirs," "heirs of the body," and "issue," we are bound to say she understood the meaning of each expression, nor can we substitute the one for the other, but to gratify her manifest intention; or, as is emphatically said by Justice *Buller* in *Doe vs. Perryn,* 2 *T. R.* 49, "unless by unavoidable and necessary construction to make sense of the will."

The second clause of the will, prior to the limitation over, gives to *Richard* and *Josias Dallam* an estate in fee simple as absolute as language could make it; being to them, "their heirs and assigns forever." The devise over was intended to take effect upon the happening of two contingencies, and not otherwise; to provide for the annihilation of the estate created in the first devisees, not to change its nature. This interpretation gives to every word of the will its natural as well as legal signification and operation, and accords with the intention of the testatrix, manifestly deducible from other parts of her testament.

By the first clause she devises to *Josias Dallam,* and "to the heirs of his body," with a limitation over, in default of issue, to *Richard Dallam* and to "the heirs of his body," remainder to *George Gouldsmith Presbury* his heirs and assigns forever. Thus showing, that when an estate tail was designed to be created, "heirs of the body" were inserted; when a fee simple, "heirs and assigns for ever." What conceivable reason then can be assigned, if an estate tail only were contemplated in the second clause, that the appropriate phraseology, used in the first (the devisee's too in both instances being the same persons,) should be wholly abandoned, and a substitute introduced, which conveyed an entirely different estate from that intended to be given. Again, in the 3d, 4th, 5th, and 17th sections of the will, where the testatrix evidently designed to pass

a fee simple estate, she uses identically the same formal words, "heirs and assigns forever," that appear in the second section in the devise to *Josias* and *Richard Dallam.* Why then should their import, in the latter case, be narrowed down to an estate tail? In obedience, say the counsel for the appellee, to two universal and inflexible rules of law—First, "that where-ever a devise is made to one, and his heirs, or heirs and assigns, with a limitation over after failure of issue of the first devisee, such limitation over reduces the fee simple, originally given, to an estate tail." The second, "that no limitation over shall operate as an executory devise, if it can be made to take effect by way of remainder." Before we admit the conclusions which have been drawn from these rules, by him to whose aid they have been invoked, let us inquire whether there be such rules; and if so, how far the legitimate exposition thereof be applicable to the case now at bar. The existence of the first, as an universal rule of law, cannot be admitted. It is special, and not universal; applicable only to cases where the limitation over is after an indefinite failure of issue. No case of authori-ty has been referred to in the argument, and it is believed that none such can be found, where a devise in terms importing a fee, with a limitation over after a definite failure of issue of the first devisee, has been held to invest him with an estate tail on-ly. Upon what principle is it, that after a devise in fee a limi-tation over, after a general failure of issue of the first devisee, reduces the estate given to an estate tail? It is said in the books, that by the use of the word issue, and the limitation over, the testator explains what is meant by the word "heirs," showing that he intended heirs of the body only. But how this expla-nation is made manifest, I have no where seen distinctly eluci-dated in the authorities. Yet, upon a moment's reflection, it is most obvious to the mind of every lawyer. By the limita-tation over, after an entire failure of issue, the testator most un-equivocally declares, that no heir of the devisee shall inherit, who is not his issue. Thus conclusively demonstrating, that by the word "heirs," in the commencement of the devise, he meant heirs of the body. But does the same reason apply to a devise in fee, with a limitation over after a definite failure of is-sue? Can, in such a case, no person inherit as heir of the devi-

see, who is not also an heir of his body? Most assuredly he may. Should the issue be not extinct, at the period fixed by the terms of the devise, then the limitation over can never take effect. And if, subsequently to that period, a failure of issue should occur, the heirs collateral of the devisee may inherit the estate devised. The principle then which converts a devise in fee with a limitation over after an indefinite failure of issue, into an estate tail, has no application to a devise in fee with a limitation over after a definite failure of issue. In the last mentioned class of cases a fee simple always passes to the devisee, liable to be defeated by the happening of the contingency upon which the limitation over is made to depend, provided the contingency be such that, by the rules of law, a fee upon a fee, by way of executory devise, may be limited upon it. But if the contingency be too remote, then is the limitation over null and void, and the estate becomes an absolute fee simple in its first inception. It is true that a *dictum* is met with in *Soulle vs. Gerrard, Cro. Eliz.* 525, which at first view might be considered in the teeth of this doctrine; and on this case the counsel of the appellee appeared to rest with the most confident reliance. The only question which should there have been decided, was simply whether "or" should be construed "and," to effectuate the testator's intention; and the facts which presented that point for adjudication were the following: The testator, having four sons, devised the land in dispute to one of them, and his heirs forever; and if he die within the age of one and twenty years, or without issue, that then the land should be equally divided amongst his three other sons. The first devisee had issue, and died under twenty-one years. The parties litigant were the issue of the son of the devisee, and the three surviving sons of the testator. Two points were argued by the counsel—first, that the disjunctive "or" should be taken for the copulative "and;" the second, that the remainder, (as it was improperly denominated,) being limited to depend upon a fee, was therefore void. *Anderson*, Chief Justice, in delivering his opinion, (which was adopted by the rest of the court,) states, "that this part of the limitation, if he die within age," is utterly void, for a remainder cannot depend upon a fee, and then it is all one as if the limitation had been single, "if he die without is-

sue;" so that the first devisee had an estate tail. The court there arrive at this notion, that the first devise is of but an estate tail, by error so manifest, that it is matter of surprise that such a decision should be seriously pressed upon a court of justice at the present day. Their whole opinion is bottomed upon a denial of what is now deemed one of the best established axioms of the law, "that by last will and testament a fee may be limited upon a fee." To bolster up this unsound adjudication, it has been alleged, that it was approved of by Lord *Holt* in *Hilliard vs. Jennings,* 1 *Ld. Ray.* 505; and by *Buller,* Justice, in *Wright vs. Kemp,* 3 *T. R.* 474. The insinuation, that so distinguished a judge as Lord *Holt* had sanctioned an error so egregious, is of itself enough to excite our suspicion of inaccuracy in the reporter; but this suspicion is converted into demonstration, when we look to the same case of *Hilliard vs. Jennings,* in 12 *Mod.* 276, and in *Com. Rep.* 94, where Lord *Holt,* so far from approving, denied the authority of *Soulle and Gerrard.* So far only, I presume, as related to the *dictum* about the estate tail. The opinion of the court, however, in *Soulle and Gerrard,* if entitled to any weight, rather supports than impugns the distinction now assumed, as to the operation of limitations over after definite and indefinite failures of issue. Before they there felt themselves authorised to reduce the estate devised to a fee tail, they were first constrained to reject, as null and void, all that part of the limitation over, which made the estate dependent on a definite failure of issue. The sole question in *Wright vs. Kemp* was, whether "or" should be construed "and;" and after Lord *Kenyon,* in support of that construction, had cited a number of authorities, *Buller,* J. observed, that in addition to the cases mentioned by his Lordship, there is another to the same effect in *Moor,* 422, where the words are, "if he die without issue *or* before twenty-one, then over." He adduced this authority as one where "or" was held to mean "and," having no allusion to the question whether the estate devised were in tail or in fee; and that by this reference he had no such design as is imputed to him by the counsel of the appellee, is most evident on turning to the case as reported in *Moor,* which is in less than five lines, and simply states, that in a devise to his "son, and if he

die without issue or before his age of twenty-one years, then re-- mainder to another; the son had issue, but died under twenty-one years, adjudged that the issue took the land, and not the remain- derman." Not one word is here to be found about an estate tail; and *Buller, J.* did as every lawyer of modern times would do, views this as a case in which nothing was determined save that "or" meant "and." But the fact is, as was observed by Lord *Hardwicke* in *Framlingham vs. Brand,* 3 *Atk.* 390, "the doctrine of executory devises was not well settled when *Soulle vs. Gerrard* was decided."

An indefinite failure of issue, is where the limitation over is to take effect whenever the issue becomes extinct. A defi- nite failure of issue, is where the limitation over is only to take effect upon the issue's becoming extinct within some spe- cified period. Has the testatrix in the case at bar tied up the failure of issue of the first devisee to any particular time, and is the time prescribed such as by the rules of law will permit a fee to be limited upon a fee? are the questions before us. And these questions have been so frequently decided in cases in *totidem verbis,* or even stronger against the appellee, that it is only necessary to refer to them to silence forever all doubt on the subject. In *Hanbury vs. Cocherill,* 1 *Roll. Abr.* 834, the testator devised lands to his son B in fee, and other lands to his son C in fee, subject to a proviso, that if either of his sons should die before they should be married, or before they should attain the age of twenty-one years, and without issue of their bodies, then he gave all the lands, which he had given to such of his sons that should so die, &c. unto such of his sons as should the other survive. It was held that the sons took in fee, subject to a limitation to the survivor for life, in case of either dying unmarried, or under twenty-one years of age, and without issue. In *Barker vs. Suretees,* 2 *Stra,* 1175, the devisor gave the premises in question to his grandson, his heirs and assigns; but in case he dies before he attains the age of twenty-one years, or marriage, and without issue, then over—Held, that the first devisee took the estate in fee, sub- ject to the executory devise over on the contingencies men- tioned. In *Walsh vs. Peterson,* 3 *Atk.* 193, the testator gave two thirds of his real estate to his son, to hold to him, his heirs

and assigns forever; but in case he shall happen to die before he attain the age of twenty-one years, or without issue, then to the testator's wife, her heirs and assigns. Lord *Hardwicke* held it to be a vested estate in fee in the son. In *Framlingham vs. Brand*, 3 *Atk.* 390, the testatrix devised her house to her son *Robert*, and his heirs and assigns forever; and in case he shall happen to die in his minority, and unmarried, or without issue, she gave it to her son *Harry*, and his heirs. Lord *Hardwicke*, in delivering his opinion, says, "the question is, if this was a devise of an estate tail in *Robert*, with remainder over to *Harry*, or if a fee with an executory devise to *Harry* on these contingencies, I am clearly of opinion this is a fee with an executory devise, and agreeable to all the cases." And he further determined, that *Robert* having arrived to the age of twenty-one and died, the house was answerable for his debts. So in *Thrustout vs. Denny and others*, 1 *Wils.* 270, the *feme* by will appoints the premises in question to her son, and his heirs forever; but in case her said son should die before his age of twenty-one years, and without issue, then she devised the land over in fee. The court held this remainder over a good executory devise, assigning as their reason, "as it depended on a contingency to arise within the compass of a life then in being." Between the words of the devise in this will, and of those in the will of *Frances Middlemore*, not the slightest shade of difference is discoverable. In *Buckworth vs. Thirkell*, 4 *Cruise's Dig.* 451, tit. *Devise*, 38, ch. 17, s. 27, a devise to a granddaughter, her heirs and assigns forever; and if she die under twenty-one years, and without issue, then to a grandson, and his heirs—Held, by Lord *Mansfield*, a devise in fee in the first taker. In *Gulliver vs. Wickett*, 1 *Wils.* 105, the testator devised lands to his wife for life, and after her death to such child as she was then supposed to be *ensient* with, and to the heirs of such child forever; provided that if such child, as shall happen to be born, shall die before the age of twenty-one years, leaving no issue of its body, then over. The court say, we are all of opinion "that the true construction of this will is, that there is a good devise to the wife for life, with remainder to the child in contingency

in fee, with a devise over, which we hold a good executory devise, as it is to commence within twenty-one years after a life in being." In *Barnitz Lessee vs. Casey*, 7 *Cranch*, 456, the same question, (the words being identically. the same as those now under consideration,) was argued in the supreme court of the *United States* by some of the most eminent counsel in the Union, and it was decided that the first devisee took an estate in fee, and that the limitation over was good as an executory devise. Many similar adjudications, made in the different states, might be cited, but it is deemed unnecessary to do so.

In neither of the cases referred to is it explicitly stated by the court that the "dying without issue" meant issue living at the time of the death of the first devisee. Yet in all those cases such must necessarily have been their decision, or they could not have pronounced the limitations over good by way of executory devise. There is no other period, to which the failure of issue intended by the devisor can be confined. If it be not thus restricted, then upon the death of the first devisee under age with issue, such issue might be successively continued for fifty generations or ten centuries, and then becoming extinct, both contingencies would have happened upon which the limitation over was to take effect. Thus creating such a perpetuity as the law abhors, and will never permit.

As to the second inflexible rule of law, so earnestly pressed into the appellee's service, it is difficult to conjecture what application can be made of it for his benefit. If the court should be of opinion, that the intention of the testatrix is apparent, and sufficiently expressed on the face of the will, to vest in *Josias Dallam* an estate in fee, with a limitation over by way of executory devise, according to the rules prescribed by law for that purpose, then the maxim of law relied on, "that a limitation over shall never be construed an executory devise, if it can be made to operate by way of remainder," can have no operation; as after a fee, nothing remains to be given. It is the duty of the court in all cases, first to elicit the intention of the testator from the will itself, as to the extent of the interest intended to be conferred on each devisee. This being done, then to devises of the character of that before us, this rule of law is to

be applied; and if the limitations over can, consistently with the testator's intent, take effect by way of remainder, they can never operate as executory devises. "But (in the language of *Fearne* 205,) this rule or principle, or maxim of construction, that a limitation shall never operate as an executory devise, where it may take effect as a remainder, may be overruled, where the intent of the testator, or author of the trust or limitation, plainly appears to contradict the legal construction of the limitation; for the intent of the testator shall always prevail, if not contrary to law; which means, if the limitation be such as the law allows; but does not mean that the words shall be taken in such sense as the law imposes upon them."

It has been urged upon the court that the opinion of Chancellor *Kent*, in *Roosevelt and others vs. Thurman*, 1 *Johns. Cha. Rep.* 220, is in point in favour of the appellee. If this were so, I should ponder well before I disregarded so high authority. But Chancellor *Kent* has made no such decision as has been imputed to him; the counsel, it is presumed, has been led into this error, in part, by a palpable mistake committed by the reporter, in giving the marginal contents of the decree; in which he states "it was held, by the words "dying without issue," the devisee took an estate tail by the *English* law, or an estate in fee under our statute;" whereas the decision of the Chancellor was, that he took either "an estate in fee, or an estate in tail, under the *English* law," which estate tail, by the statute of *New York*, is made an estate in fee. He gives no express opinion upon the point now in controversy, as it did not arise in that case; but as far as his views can be collected from what he did say, they are in perfect harmony with the adjudications referred to in support of the appellant's pretensions.

Too much time has already been consumed in reviewing authorities in which there is scarcely to be found a shade of discrepancy. The true construction of the second clause of *Frances Middlemore's* will, (as far as relates to this controversy,) is, that *Josias Dallam* took an estate in fee in a moiety of *Palmer's Forest*, subject to an executory devise over, to take effect in the event of his dying under the age of twenty-one years, and without issue living at the time of his death. I think, therefore, that the judgment of the county court should be reversed, with costs.                JUDGMENT REVERSED.